UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

PACIFIC BULK SHIPPING LTD.,

Plaintiff,

- against -

TMT BULK CO. LTD. a/k/a TMT BULK and DUCKY EXPRESS SHIPPING S.A.,

Defendants.

---

08 Civ. ______

ECF CASE

**VERIFIED COMPLAINT**

Plaintiff, PACIFIC BULK SHIPPING LTD., (hereinafter "Plaintiff") by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendants, TMT BULK CO. LTD. a/k/a TMT BULK ("TMT") and DUCKY EXPRESS SHIPPING S.A. ("DUCKY")(collectively referred to as "Defendants"), alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2. At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under foreign law.

3.     At all material times Plaintiff was the Owner of the ocean going motor vessel "CHINA PEACE" (hereinafter the "Vessel").

4.     Upon information and belief, Defendant TMT was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with an address in Taipei.

5.     Upon information and belief, Defendant DUCKY was, and still is, a foreign corporation, or other business entity organized and existing under foreign law, and was, and still is, a trade name, alias, alter-ego, paying agent, receiving agent, and/or joint venturer of TMT who is now, or will soon be, holding assets belonging to TMT.

6.     Pursuant to a charter party dated November 9, 2007 Plaintiff chartered the Vessel to Defendant TMT for the carriage of iron ore in bulk.

7.     During the course of the charter, disputes arose between the parties regarding TMT's failure to pay freight and demurrage charges due and owing under the charter party.

8.     As a result of TMT's breach of charter party contract, Plaintiff has sustained damages in the principal amount of $3,874,649.88, exclusive of interest, arbitration costs and attorneys fees. *See claim submission annexed hereto as Exhibit "1."*

9.     In accordance with the Charter Party, disputes between the parties are to be submitted to arbitration in London with English law to apply.

10.    Despite due demand, TMT has failed to pay the amounts due and owing to Plaintiff.

11.    Thus, Plaintiff has commenced arbitration on its claim(s) and appointed an arbitrator.

12. This action is brought in order to obtain jurisdiction over Defendant(s) and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

13. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claim:<br>Load port demurrage:<br>Discharge port demurrage: | <br>$3,601,107.86<br>$ 273,542.02 |
| B. | Interest on claims:<br>3 years at 7.5%, compounded quarterly | $ 967,563.53 |
| C. | Estimated attorney's fees and expenses and arbitration costs: | $ 750,000.00 |
| Total | | **$ 5,592,213.41** |

14. Defendant TMT is the alter-ego of Defendant Ducky because it dominates and disregards Ducky's corporate form to the extent that TMT is actually carrying on Ducky's business and operations as if the same were its own, or vice versa.

15. Upon information and belief, Defendant Ducky is a shell-corporation through which Defendant TMT conducts its business, or vice versa.

16. Upon information and belief, Defendant TMT has no separate, independent identity from Defendant Ducky.

17. Upon information and belief, TMT uses Ducky as a "paying/receiving agent" or "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations and in particular its vessel charters.

18. It is not general practice in the maritime community, nor any where else, for independent companies to make or receive large payments on behalf of other independent companies.

19. Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

20. Upon information and belief, Ducky makes payments on TMT's behalf where Ducky has absolutely no contractual obligation to TMT's creditors.

21. Upon information and belief, Ducky made a freight payment to Plaintiff amounting to 95% of the freight owed under the subject charter party where Ducky had absolutely no contractual obligation to do so.

22. Furthermore, upon information and belief, Ducky has made payments to TMT's creditors under other charter parties where Ducky has absolutely no contractual obligation to do so.

23. Upon information and belief, Defendant TMT instructed Plaintiff to make freight payments under a separate, unrelated charter party to the account of Ducky.

24. Based on the foregoing, as well as other activities, TMT and Ducky should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of Ducky susceptible to attachment and/or restraint for the debts of TMT.

25. By virtue of the foregoing, Ducky is properly considered a party to the subject contract as the trade name, alias, alter ego, paying agent, and/or prime mover and controller of Defendant TMT.

26. In the further alternative, Defendants are partners and/or joint venturers.

27. In the further alternative, Defendants are affiliated companies such that Ducky is now, or will soon be, holding assets belonging to TMT, or vice versa.

28. The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant(s) have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

29. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant(s) held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE,** Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That the Court retain jurisdiction to compel the Defendant(s) to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C. That pursuant to 9 U.S.C. §§ 201. *et seq.* this Court recognize and confirm any judgment rendered on the claims had herein as a Judgment of this Court;

D. That since the Defendants cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant(s), in the amount $ **5,592,213.41** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

E. That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court

F. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

G. That in the alternative, this court enter Judgment against the Defendants on the claims set forth herein;

H. That this Court award Plaintiff its attorney's fees and costs of this action; and

I. That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: May 27, 2008
New York, NY

The Plaintiff,
PACIFIC BULK SHIPPING LTD.,

By: Anne C. Levasseur

Ann C. Levasseur
Nancy R. Peterson
Patrick F. Lennon
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
acl@lenmur.com
nrp@lenmur.com
pfl@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York    )
                     )    ss.:    City of New York
County of New York   )

1.    My name is Anne C. Levasseur.

2.    I am over 18 years of age, of sound mind, capable of making this
Verification, and fully competent to testify to all matters stated herein.

3.    I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the
Plaintiff.

4.    I have read the foregoing Verified Complaint and know the contents
thereof and believe the same to be true and accurate to the best of my knowledge, information
and belief.

5.    The reason why this Verification is being made by the deponent and not
by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now
within this District.

6.    The source of my knowledge and the grounds for my belief are the
statements made, and the documents and information received from, the Plaintiff and agents
and/or representatives of the Plaintiff.

7.    I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    May 27, 2008
          New York, NY

                            Anne C. Levasseur
                            Anne C. Levasseur

EXHIBIT "1"

**IN THE MATTER OF THE ARBITRATION ACT 1996**
**AND IN THE MATTER OF ARBITRATION**

**BETWEEN:**

**PACIFIC BULK SHIPPING LIMITED**

**Claimant / Shipowner**

**-and-**

**TMT BULK CO. LTD**

**Respondent / Charterer**

***"M/V CHINA PEACE"***

---

**CLAIM SUBMISSIONS**

---

1. The Claimant's claim for demurrage arises out of the carriage of a cargo of iron ore on the vessel MV CHINA PEACE ("the Vessel").

2. Pursuant to a fixture recap, contained in message dated 9 November 2007 ("the Charter") [1-13], Pacific Bulk Shipping Limited chartered the Vessel to TMT Bulk Co. Ltd for the carriage of 160,000 mt (10% moloo) iron ore in bulk for a single voyage PDM/Qingdao.

Contractual provisions

3. The terms of the Charter, to which the Claimant shall refer for its full terms and effect, included the following provisions:

Message of 9 November 2007

"- 160,000mt 10% moloo iron ore in bulk
- PDM/Qingdao
- Laycan 24 Nov to 4 Dec 2007
- Freight: USDXX. 00/PMT bss PDM/Qingdao
- L/D Scale load/27500 shinc
(pdm: 40 HOURS FOR 1st 120,000WMT AND 1 HOUR OR PRO-RATA FOR EACH 5,000 WMT EXCEEDING 120,000 MT TT 12HRS USC ATUTC)
- 12 hrs TT load/24 hrs disch
- Other load/discharge ports to be calculated on open book basis to arrive at same timecharter equivalent...

- demurrage USD230,000 hdlts bends...
- 3.75% addcomm + 1.25PCT to MIT.
- owise as per chtrs b/b c/p with logical amendments except for-...

Charterparty of 12 January 2007

8. **Demurrage and Despatch Clause**

Demurrage and despatch shall be calculated on basis of the statement of facts made by Agents at loading port entrusted by Owners and mutually confirmed by Master and Loading and Discharging Port Authority.

8A. Loading Port

Laytime at loading port is non-reversible.

Loading rate (scale load): ..

c) At Sepetiba: 50,000 metric tons per weather working day, Sundays and holidays included...,

12hours turn time, unless sooner commenced, any time used to count at load port.

Demurrage rate: US$ 230,000 per day or pro rata for part of a day for laytime over-used.

...

8.A.a. The following time will not count as laytime at loading ports:-

- time used for sailing from anchorage to wharf till all fastened at the designated loading berth
- time used for joint inspection
- time used for draft survey during loading
- stoppage caused by adjusting ballast (or deballasting)
- stoppage caused by bad weather (bad weather will be defined according to the declaration of terminal/port authority)
- stoppage or partial stoppage caused by Owners and partial stoppage as pro rata
- stoppage caused by Force Majeure

8.B. Discharging Ports

Discharging rate: 27,500 metric tons per weather working day of 24 consecutive hours Sunday and holiday included with 24 hours turn time each discharging port, unless sooner commence and half time to count.

Demurrage rate: US$230,000 per day or pro rata for part of a day for laytime over-used.

..

8.B.a. At the discharging ports, Notice of readiness shall be tendered any time day or night Sundays and holidays included, provided the vessel is ready for discharging. Laytime shall commence 24 hours after tendering the Notice of Readiness, unless sooner commenced.

8.B.b. The following time will not count as laytime at discharging ports:-

- time used for sailing from anchorage to wharf till all fastened at the designated discharging berth
- time used for shifting between berth to berth
- time used for draft survey during discharging
- stoppage caused by adjusting ballast (or deballasting)
- stoppage caused by bad weather (bad weather will be defined according to the declaration of terminal/port authority)

- stoppage or partial stoppage caused by Owners and partial stoppage as pro rata

- stoppage caused by Force Majeure

**23. Strike and Force Majeure Clause**

23.a. At loading port:

The time lost as a result of all or any of the following causes under shall not count as laytime and demurrage VIZ: wars, rebellions, tumults, civil commotions, strikes, insurrections, political disturbances, epidemics and quarantine, riots, lock-out, stoppage miners, workmen, railway employees, stevedores, seamen or any other workers essential to the working, carriage, delivery, shipment, interruptions of railway transport, whether partial or general, landslips, floods, intervention of sanitary, customs and/or other constituted authorities or other causes beyond Charterers' control preventing cargo preparation, loading or berthing vessel. Once a nominated vessel has been confirmed by Charterers, any loss of vessel's schedule incurred by strikes of the miners or company employees is to be considered as Force Majeure.

**24. Arbitration**

Any disputes arising under the Contract shall be settled amicably. In case no such settlement can be reached, the matter in dispute shall be referred to three persons at London and according to English law. One chosen by each of the parties hereto and the third by the two so chosen, their decision or that of the two of them shall be final, and for the purpose of enforcing any awards, this agreement may be made a rule of the court, the arbitrators shall be commercial men.'

<u>Relevant background facts</u>

4. All references to times for the loadport of Itaguai are, unless stated otherwise, to the CPBS Statement of Facts [14] and, for the disport of Rizhao, to the Sino-Ocean Shipping Agency Rizhao Laytime Statement of Facts dated 3 February 2008 [15].

5. The vessel arrived at the outer anchorage for the port of Itaguai at 22.15 hours on 28 November 2007.

6. NOR was tendered to the shipper, Companhia Vale do Rio Doceby ("CVRD"), care of CPBS Terminal, by the Master at 22.15 hours on 28 November [16]. NOR was accepted orally by CPBS, the wholly owned-subsidiary of CVRD, as agent for and on behalf of the Respondent and/or CVRD at 22.15 hours. The NOR was subsequently signed and stamped by CPBS in the same capacity upon berthing of the vessel on 17 December.

7. The vessel remained at the outer anchorage until 10.06 hours on 3 December when she proceeded to the inner anchorage, arriving there at 13.30 hours on 3 December. Port Authority clearance was given at 14.35 hours and free pratique granted at 15.45 hours on 3 December.

8. On 9 December CPBS gave notice that due to an incident which occurred at about 09.00 hours on 8 December causing severe damage to one of the mooring dolphins at the

berthing/loading terminal, all berthing/loading operations at the terminal were being stopped for a period of approximately 10 days [17]. No notice of force majeure was ever given by shippers CVRD or by Charterers.

9. At 11.12 hours on 17 December the vessel weighed anchor at the inner anchorage and berthed alongside the CPBS terminal at 15.45 hours. Loading operations commenced at 16.05 hours on 17 December and ceased at 20.20 hours on 18 December. The final draft survey was completed at 20.30 hours on 18 December.

10. As per the SOF, a total of 158,004.00 mt were loaded on the vessel.

11. The vessel sailed for the disport of Rizhao, arriving there at the anchorage at 06.18 hours on 26 January 2008. NOR was tendered and received by Sino-Ocean Shipping Agency Rizhao at 06.18 hours [18].

12. The vessel weighed anchor at 11.00 hours on 1 February and berthed alongside at 15.24 hours. Free pratique was granted at 16.30 hours. The initial draft survey was carried out between 16.30 and 17.30 hours.

13. Discharge commenced at 17.30 hours and continued until 11.15 hours on 3 February. The final draft survey was carried out between 11.15 hours and 12.15 hours. The vessel sailed at 14.08 hours on 3 February 2008.

Demurrage

14. For the avoidance of the doubt, the Claimant relies upon the loadport laytime calculations as set out in the Schedule [19-20] attached to these claim submissions and not to the Itaguai loadport laytime calculation enclosed with the invoice of 12 February 2008.

15. Pursuant to clause 8.A. of the Charter the Respondent was allowed 3 days 3 hours 51 minutes laytime to load the cargo[1] and, pursuant to clause 8.B., 5 days 17 hours 54 minutes of laytime to discharge the cargo[2].

16. In breach of these clauses it took 19 days 10 hours 15 minutes to load the cargo and 6 days 23 hours 33 minutes to discharge the cargo, as fully set out in the attached Schedule headed

[1] See the calculation at footnote 4 of the Schedule.

[2] See the calculation at footnote 14 of the Schedule.

*"Laytime and Demurrage calculation"*. Demurrage is therefore payable at the Charterparty rate of US$230,000 pdpr for:

(a) 16 days 6 hours 24 minutes at the loadport, being US$3,741,410.77. Giving credit for 3.75% address commission, the net sum payable by the Respondent to the Claimant in respect of demurrage is US$3,601,107.86; and

(b) 1 day 5 hours 39 minutes at the disport, being US$284,199.50. Giving credit for 3.75% address commission, the net sum payable by the Respondent to the Claimant in respect of demurrage is US$273,542.02.

Agreement on undisputed laytime

17. On 7 April 2008 the parties reached an agreement in relation to a portion of the sums outstanding that was undisputed. This was based on a message received from the Respondent which included two schedules setting out the non-disputed laytime at the loadport and discharge port [21-24]. These two schedules show that the undisputed laytime is, in total, US$1,995,968.75[3]. On 7 April the Claimant accepted the undisputed elements of Charterers' laytime schedule in the following terms:

> "Owners thank Chtrs for their kind message dated April 7th 2008. Owners own version of non-disputed part is a bit larger than Chtrs' version, however we would later today send Chtrs an updated invoice for non-disputed part as per Chtrs shortly and leave the balance for future." [25]

18. On 8 April the Claimant sent two invoices, numbers PAC323/07-3 and PAC323/07-4 [26-28] which reflected the undisputed laytime as agreed with the Respondent. The outstanding undisputed balance was US$1,995,968.80[4]. This is due and owing to the Claimant pursuant to the agreement reached on 7 April 2008 in relation to the undisputed sums.

[3] This figure being the sum of the loadport demurrage of US$2,083,895.53 less the disport despatch claimed of US$87,927.08.

[4] This figure can be derived from invoice PAC323/07-3 as: the difference between the Itaguai loadport demurrage of US$3,722,722.50 plus the Rizhao disport demurrage of US$284,199.50 less the disputed amount of US$2,010,953.25.

Conclusion

19. In breach of clause 10 of the Charter, and the agreement reached on 7 April 2008, the Respondent has not paid to the Claimant the sums claimed for demurrage whether in the amount set out in the invoice of 12 February 2008, as set out above, as agreed on 7 April 2008, or at all.

20. Further, the Claimant claims and is entitled to interest on such sums as are awarded to it for such period and at such rate as the Tribunal considers appropriate pursuant to section 49 of the Arbitration Act 1996.

**AND THE CLAIMANT / SHIPOWNER CLAIMS:**

(1) Demurrage in the sum of US$3,674,649.58;

(2) Interest pursuant to section 49 of the Arbitration Act, 1996;

(3) Costs.

MFB

SERVED this 20th day of May 2008 by MFB, London.

Solicitors for the Claimant / Shipowner.

From: pacific bulk -- tokeliu [chrtg@pacificbulk.com]

Sent: 10 December 2007 12:35

Subject: Fw: CHINA PEACE / TMT = CLEAN RECAP =

FM: MIT TAIPEI - CAPE-PMX TEAM - Ref: C71109-LS4217.
TO: PACIFIC BULK SHIPPING

ATTN: MR. LIU YONG REN

RE: MV. CHINA PEACE/TMT - CPDD: 9/NOV 2007
===

RETELCONV PLSD TO CFM CLEAN FIXTURE ASF:-

-MV. CHINA PEACE
BUILT 2005
D/W 174,413.4MT ON 18.1M SSW
LOA 289.00M BEAM 45.00M
TPC 119.21MT ON 18.1M
9 HO 9 HA
GRAIN CAPACITY 193,247CBM
-AA-

- A/C TMT BULK CO., LTD
- 150,000mt 10% molco iron ore in bulk
- PDM/Qingdao
- Laycan 24 Nov to 4 Dec. 2007
- Freight: USDXX.00/PMT bss PDM/Qingdao
- L/D scale load/27500 shinc
  (pdm : 40 HOURS FOR 1ST 120,000WMT AND 1 HOUR OR PRO-RATA FOR EACH 5,000 WMT EXCEEDING 120,000 MT TT 12HRS USC ATUTC)
- 12 hrs TT load/24 hrs TT disch
- Other load/discharge ports to be calculated on open book basis to arrive at same timecharter equivalent
- 95 pct of freight payable w/i 8 banking days after s/rl bs/l marked 'freight payable asp c/p'
- demurrage USD230,000 hdlte bends
- port d/a lumpsum usd 90,000 for port disbursment at one dischg port and usd 120,000 for port disbs at two dischg ports which will be deducted from initial freight payment w/o supporting voucher.
- 3.75% addcomm + 1.25PCT to MIT.
- owise as per chtrs btb c/p with logical amendments except for:-

CL 2. THE LAST SENTENCE 'In case any survey at loading port causing by vessel's age and condition, Notice of Readiness will only be allowed to tender after such survey granted.' DELETE

CL 8.B. "25,000" REPLACED BY "27,500"

CL 8B.f. Insert "and time" after words "Expenses"

CL 9. DELETE 3-8 LINES FM "FREIGHT FOR OTHER LOADING PORT:... (BASIS 17.1 METER DRAFT)"

END RECAP

TKS VM YOUR KIND SUPPORT.

TKS & B RGDS

MIT Cape-Pmx desk : charter@mittpe.com.tw
--------------------------------------------------------
TEL +886-2-87125289
Roger Wang (D) +886-2-3518 5783 (M) +886-910 068 197
Vickie Fang 5785 913 889 306
Lynn Shih 5787 932 013 060

PCCW IMS Virus Control Center, powered by Trend Micro, scans all your attachment for known viruses.

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

May. 27. 2008  2:37PM    Lennon, Murphy & Lennon LLC                    No. 4872   P. 40

# Charter Party

## dated 12th January, 2007

| | |
|---|---|
| Owners | : TMTBULK Co., Ltd., Taipei |
| Charterers | : |
| Performing Vessel | : M.V. "TMT TBN" |
| Loading Port | : Tubarao or Ponta Da Madeira or Guaiba International Terminal or Sepetiba (which to be renamed as Itaguai) or Ubu, Brazil |
| Discharging Port | : Options in China |

3

M/V "TMT TBN" – C/P DATED 12TH JANUARY 2007 IN TAIPEI

This Contract, dated 12th January 2007 in Taipei is concluded by and between ____________ as Charterers (hereinafter referred to as Charterers"), and TMTBULK Co., Ltd., Taipei as Owners (hereinafter referred to as "Owners").

WITNESSETH THAT:
This is a Charter Party with Owners for the shipment of IRON ORE from (See Clause 7.A.), to (See Clause 7.B.).

WHEREAS, Charterers undertake to provide and Owners undertake to transport on the terms and conditions are set forth as follows.

1. Definitions
In this Charter Party, unless otherwise defined, the terms should have following meanings:

1.a. "Ore" - means iron ore in bulk including iron ore concentrates in bulk, and fine, pellets, lump in bulk. Their quality, nature and shipping conditions are within IMO regulation, but always excluding DRI/DRIP/HBI and Sponge Iron Ore.
1.b. "Dollars" and "Cents" - means respectively dollars and cents in lawful money of the United States of America.
1.c. "Contract cargo" – means (See Clause 3 and 4).
1.d. "Business Day" - means days excluding Saturdays, Sundays, public holidays and bank holidays in china.

2. Vessels To Be Used
M.V. "TMT TBN" – maximum 18 years

Owners confirm performing vessel will be either owners' period-in vessel or time charter-in vessel or voyage charter-in vessel. And owners confirm that each vessel nominated will be under owners' control and the period will be longer than each shipment.

The operating vessel should be owners controlled or chartered bulk carriers or ore carriers, or OBO or ore-oil combination carriers, seaworthy, cargo worthy, tight, staunch, and strong suitable for intended voyage and suitable for ordinary grab discharging and shall be in the highest classification for vessels of their age and type with Lloyds, ABS or equivalent. All certificates of the nominated vessel shall be valid till the relevant voyage is complete.

Owners guarantee the vessel is fitted for Iron Ore trade between Brazil and China and comply with all loading and discharging ports regulations and having all valid certificates, etc. All time/costs/expenses incurred in not complying with the regulations to be for Owners' time and account. In case any survey at loading port causing by vessel's age and condition, Notice of Readiness will only be allowed to tender after such survey granted.

3. Shipping Period / Nomination

4. **Cargo Quantity**
cargo size to be 160,000 metric tons 10 percent more or less in Owners' option of Iron Ore in bulk including iron ore concentrates in bulk, fine, pellets and lump but always excluding direct reduced iron ore, direct reduced iron ore pellets, hot briquetted iron ore, hot briquetted iron ore pellets and any other of DRI/HBI products, direct reduction iron ore. Maximum two grades are allowed and cargo shall be loaded, stowed, trimmed, carried and discharged in accordance with IMO's and local requirements and recommendations.

5. **Deviation**
Carrying vessel shall sail and arrive at the port of discharging within the normal and reasonable period of time. Any unreasonable deviation or delay is not allowed. It is understood that the vessels are allowed to proceed at economical speed and bunker on usual route.

Owners shall have the responsibility to advise Charterers of accidents occurred as soon as which is known to Owners while vessel being en route. If Owners fail to give such advice in time, any losses and charges incurred therefrom shall be for Owners' account. For the purpose of saving life or property the vessel has liberty to sail with or without pilots to tow and assist vessel in distress and to deviate.

6. **Notices**

6.a. On sailing from the proceeding port, Master and Owners shall inform the Shippers and Shippers' Port Administration at Port of Loading and Charterers, by telex or fax, the expected time of arrival (ETA) of the vessel. Such information shall be updated twelve (12) days, eight (8) days three (3) days, two (2) days and one (1) day before the vessel's expected arrival at loading port, or at any time upon Charterers' request.

6.b. Master or Owners shall with the 72 hours notice inform Shippers about vessel's cargo plan with following details:

- Arrival and departure drafts
- Air draft
- Ballast quantity on arrival and, if in cargo holds, how distributed
- Time required for deballasting after berthing (deballasting time will be accorded to condition when vessel passed nomination by charterer.)
- Loading sequence

Master or Owners shall also state in 72 hours notices, whether a "Gas Free Certificate" is required or not.
Unless otherwise instructed by Shippers, Master or Owners shall undertake that vessel be presented for berthing with minimum ballast compatible with vessel's seaworthiness.

6.c. Owners should, on departure of the vessel from the loading port, by cable (including e-mail or fax) inform Charterers of the shipping advice (indicating departure date,

M/V "TMT TBN" – C/P DATED 12TH JANUARY 2007 IN TAIPEI

ETA China, loaded quantity of each type of ore, estimated arrival draft and hatchwise plan).

6.d. Master of the vessel or Owners shall give Charterers' agent and Charterers at the discharging port(s) the following 6 notices of ETA of the vessel at the discharging port. The first notice to be given on departure of the vessel from loading port, then 20 days , 15 days, 10 days, 72 hours and 24 hours prior to ETA.

The first notice shall indicate the name of the vessel, the type and quantity of cargo and the number of compartments.

7. **Loading Port And Discharging Port**

7.A. Charterers shall load the cargo and trimmed at one or two safe berth(s), one safe port Tubarao or Ponta da Madeira or Guaiba International Terminal or Sepetiba (which to be renamed as Itaguai) or Ubu, Brazil, all in Charterers' option, always safely afloat, free of risks, expenses to Owners.

7.B. Upon completion of loading, the vessel shall proceed to discharging port all in Charterers' option as follows:

a) one or two safe berth(s) each one safe port Beilun or Majishan or Qingdao or Rizhao or Yantai or Caofeidian or Bayuquan or Dalian or Xingang or Lianyungang.
b) one or two safe berth(s) each one safe port Beilun or Majishan or Qingdao or Rizhao, plus one or two safe berth(s) each one safe port Baoshan or Luojing or Nantong or Zhangjiagang (Haili terminal).
c) one safe anchorage plus one or two safe berth(s) each Shanghai (Luhuashan plus Luojing, which to be deemed as one discharging port) or Zhanjiang or Fangcheng.
d) one safe anchorage plus one or two safe berth(s) Luhuashan, plus Nantong or Zhangjigang (Haili terminal).
e) one or two safe berth(s) each one or two safe port(s) Rizhao plus Lanshan.
f) one safe anchorage plus one or two safe berth(s) Zhanjiang or Fangcheng, plus one or two safe berth(s) each Baoshan or Luojing or Nantong or Zhangjiagang (Haili terminal).

8. **Demurrage and Despatch Clause**

Demurrage and despatch shall be calculated on the basis of the statement of facts made by Agents at loading port entrusted by Owners and mutually confirmed by Master and Loading and Discharging Port Authority.

8A. Loading Port

Laytime at loading port is non-reversible.

Loading rate (scale load):

a) At Tubarao / Ponta Da Madeira: 40 hours for first 120,000 metric tons and one hour or pro-rata for each 5,000 metric tons exceeding 120,000 metric tons.

b) At Guaiba International Terminal: 55,000 metric tons per weather working day, Sundays and holidays included.

c) At Sepetiba: 50,000 metric tons per weather working day, Sundays and holidays included.

d) At Ubu: 60,000 metric tons per weather working day, Sundays and holidays included.

12 hours turn time, unless sooner commenced, any time used to count at load port.

Demurrage rate : US$ ________ per day or pro rata for part of a day for laytime over-used.
Despatch rate : US$ ________ per day or pro rata for part of a day for laytime saved.

8.A.a. The following time will not count as laytime at loading ports:-

- time used for sailing from anchorage to wharf till all fastened at the designated loading berth
- time used for joint inspection
- time used for draft survey during loading
- stoppage caused by adjusting ballast (or deballasting)
- stoppage caused by bad weather (bad whether will be defined according to the declaration of terminal/port authority)
- stoppage or partial stoppage caused by Owners and partial stoppage as pro rata
- stoppage caused by Force Majeure

8.B. Discharging Ports

Discharging rate: 25,000 metric tons per weather working day of 24 consecutive hours Sunday and holiday included with 24 hours turn time each discharging port, unless sooner commence and half time to count.

Demurrage rate : US$ ________ per day or pro rata for part of a day for laytime over-used.
Despatch rate : US$ ________ per day or pro rata for part of a day for laytime saved.

8.B.a. At the discharging ports, Notice of readiness shall be tendered any time day or night Sundays and holidays included, provided the vessel is ready for discharging. Laytime shall commence 24 hours after tendering the Notice of Readiness, unless sooner commenced.

8.B.b. The following time will not count as laytime at discharging ports:-

- time used for sailing from anchorage to wharf till all fastened at the designated discharging berth
- time used for shifting between berth to berth
- time used for draft survey during discharging
- stoppage caused by adjusting ballast (or deballasting)
- stoppage caused by bad weather (bad whether will be defined according to the

declaration of terminal/port authority)

- stoppage or partial stoppage caused by Owners and partial stoppage as pro rata
- stoppage caused by Force Majeure

8.B.c. Laytime is non-reversible between loading port and discharging port.

8.B.d. Deleted

8.B.e. Each vessel has the right, according to the rules and regulations of the port, to sail from discharging port at the first available tide (confirmed by pilot station of the port) after completion of discharging, no matter laytime has been fully used or not.

8.B.f. The Master will try to pursuade the Port Authority at discharging port to clean the remains of cargoes dropped on deck during discharging. Expense shall not be for owners' account.

9. Freight Rates

Freight basis Tubarao / Qingdao:
U.S.$ per metric ton FIOST basis 1/1

Freight for other loading port:
Ubu: plus U.S.$ 0.20 per metric ton over Tubarao rate.
PDM: plus U.S.$ 0.20 per metric ton over Tubarao rate.
GIT: plus U.S.$ 1.15 per metric ton over Tubarao rate.
Sepetiba: plus U.S.$ 1.15 per metric ton over Tubarao rate (basis 18.1 meter draft).
Sepetiba: plus U.S.$ 2.35 per metric ton over Tubarao rate (basis 17.1 meter draft)

The above freight rate shall be on F.I.O.S.T. basis per metric ton on Bills of Lading quantity (and deadfreight if applicable).

Freight for other loading and discharging ports to be calculated on the open book basis based on the time charter return by the final performing vessel on Tubarao / Qingdao route at agreed base freight rate to the final discharging port only and no re-positioning advantage/dis-advantage for Owners.

Terms for other loading and discharging ports to be advised later. Any alternative loading port shall be always within Brazil and any alternative discharging port shall be always within P.R.China.

10. Payment of Freight

10.A. Freight is to be paid in U.S. Dollars to the bank account designated by Owners.

10.B. Initial 95% freight payable within 7 banking days after signing / releasing bills of Lading marked "Freight Payable as per Charter Party" and against Owners' original freight invoice. Balance 5% freight to be settled together with demurrage(s) / despatch(es), if any, within 30 calendar days after completion of discharging and agreeing laytime calculation with supporting documents.

M/V "TMT TEN" – C/P DATED 12TH JANUARY 2007 IN TAIPEI

11. At Discharging Ports

11.A. The cargo on vessel shall be in grabs' reach. Vessel shall be guaranteed suitable for grab discharge. If the cargo is not accessible by means of grabs (including in hatches), the extra expenses over and above the cost of normal grab discharge at discharging ports shall be for Owners' account.

11.B. Overtime of the crews and officers on board shall be for Owners' account. The vessel shall, if required, supply light for night work as on board free of expenses to Charterers.

12. Taxes and Dues

Any taxes/dues/wharfages on cargo at loading and discharging ports shall be for Charterers' account. Any taxes/dues/wharfages on vessel/freight/Bill of Lading at loading port shall be for Owners' account.

13. Stevedoring Damage at Loading and Discharging Ports

Stevedoring damage, if any at loading port shall be settled between Port Authorities and Owners, but Charterers will lend all possible assistance to Owners.

Stevedore damage, if any at discharging port, shall be settled between Owners and port Authorities, but Charterers will lend all possible assistance to Owners in collecting any stevedore damage claims.

14. Bill of Lading

The Bill of Lading shall be prepared in accordance with procedures established in the Purchase Contract. The Bill of Lading shall be signed by Master or Agents of Owners with 24 hours after completion of loading and awarded to Shippers, freight and all conditions as per this Charter Party. If any of clauses in Bill of Lading is inconsistent with that in this Charter Party, the latter to be taken as governing documents.

15. Assignment

Neither Owners nor Charterers may assign the contract in whole or in part without prior written consent of the other party. Owners and Charterers shall always remain responsible for the due fulfillment of this Charter Party.

16. Agent(s)

Charterers' agent at both loading and discharging port. Agents to be local licensed shipping agency to be nominated which is subject to Owners approval.

Charterers to settle disbursements on Owners' behalf at lumpsum U.S.$ 90,000 for port disbursements at one discharging port and US$120,000 for port disbursements at two discharging ports including agency fees and Chinese tonnage dues, if any. Same amount to be deducted from initial freight payment without supporting vouchers.

Once the agents have been confirmed, Charterers/Owners shall inform Charterers/ Owners of their agents at loading and discharging ports in time. Charterers/Owners shall send to Charterers/Owners by express-mail or fax the statement of facts of loading and discharging ports within three (3) business days after the completion of discharging.

M/V "TMT TBN" – C/P DATED 12TH JANUARY 2007 IN TAIPEI

17. General Average

In case of General Average, the same shall be adjusted according to "York-Antwerp Rules 1974 amended 1990". Should the vessel be put into any port or ports due to leakage or damage incurred en route or in any port, the Master and Owners shall inform Charterers without any delay.

18. War Cancellation Clause

In the event of war or warlike operation involving either Japan, the United States of America, Great Britain, Russia, P.R. China, Brazil, Norway or the nation under the flag of which any vessel performing under this Charter Party is registered, and this, seriously affects Charterers' or Owners' ability to perform or cost of performing their obligations under this Contract, Charterers or Owners may advise the other party, that they wish to cancel this particular voyage.

The parties shall then meet within thirty (30) days, to decide whether this Contract or any part of it shall be amended, suspended or otherwise dealt with. If no agreement is reached, the Contract shall be suspended for ninety (90) days and failing agreement by end of this ninety (90) days extension, the voyage in question shall be cancelled. If major war breaks out between any two or more of the above-mentioned countries directly affecting the performing of this Contract, both Owners and Charterers shall have the right to cancel this Contract.

19. Both to Blame Collision Clause

Clause 23 of ASBATIME 1981 shall apply to this Charter Party.

20. New Jason Clause

Clause 23 of ASBATIME 1981 shall apply to this Charter Party.

21. Clause Paramount

All Bills of lading under the Charter Party shall include the following Clause Paramount: Hague-Visby Rules 1968 or similar legislation of the nation of destination shall be applicable.

22. War Risk

Clause 16 of Gencon (Revision 1976) shall apply to this Charter Party.

23. Strike and Force Majeure Clause

23.a. At loading port:

The time lost as a result of all or any of the following causes under shall not be count as laytime and demurrage VIZ: wars, rebellions, tumults, civil commotions, strikes, insurrections, political disturbances, epidemics and quarantine, riots, lock-out, stoppage miners, workmen, railway employees, stevedores, seamen or any other workers essential to the working, carriage, delivery, shipment, interruptions of railway transport, whether partial or general, landslips, floods, intervention of sanitary, customs and/or other constituted authorities or other causes beyond Charterers' control preventing cargo preparation, loading or berthing vessel. Once a nominated vessel has been confirmed by

Charterers, any loss of vessel's schedule incurred by strikes of the miners or company employees is to be considered as Force Majeure.

23b. At discharging ports:
Time lost as a result of all or any of the following cause shall not be count as laytime and demurrage, VIZ: wars, rebellions, tumults, civil commotions, strikes, insurrections, political disturbances, epidemics, quarantine, riots, lock-out, stoppage of workmen, railway employees, stevedores, seamen or any other workers essential to the working, carriage, delivery, shipment, interruptions of railway transport, whether partial or general, landslips, flood, intervention of sanitary, customs and/or other constituted authorities or other causes beyond Charterers' control preventing cargo preparation, discharging or berthing vessel.

If there is a strike or lockout or boycott or Force Majeure condition, affecting the vessel's arrival time, the discharging after the vessel's arrival at or off the port of discharge, vessel's berthing, departure and same has not been settled within 48 hours, Charterers shall have the option of keeping the vessel waiting until such strike or lockout or boycott or Force Majeure condition is at an end against paying demurrage plus bunkers consumed after expiration of the time allowed for discharge, or ordering the vessel to a safe port where she can safety discharge without risk of being detained by strike or lockout or boycott or Force Majeure.

Such orders shall be given within 48 hours after the master or Owner have given notice to Charterers of strike or lockout, boycott of Force Majeure condition affecting the discharge. On delivery of the cargo at such port, all conditions of this Contact shall apply and the vessel shall receive the same freight as if she had discharged the cargo at the original port. If the distance of the substituted port exceeds 100 nautical miles, the freight rate on the cargo delivered at the substituted port to be increased in proportion. In any event any expenses and risk causes by strike or lockout or boycott of master, officers or crew on board the performing vessel always to be for Owners' account

24. Arbitration

Any disputes arising under the Contact shall be settled amicably. In case no such settlement can be reached, the matter in dispute shall be referred to three persons at London and according to English law. One chosen by each of the parties hereto and the third by the two so chosen; their decision or that of the two of them shall be final, and for the purpose of enforcing any awards, this agreement may be made a rule of the court, the arbitrators shall be commercial men.

25. War Risk Insurance

War Risk Insurance, if any, shall be for Owners' account.

26. Extra Insurance

No overage premium to apply.

27. Lien

Owners shall have a lien on cargo for ocean freight, deadfreight, demurrage and General

Average contribution due under the Charter Party.

28. Gas Free Clause

Vessel nominated by Owner shall be in gas free condition and shall have a valid Gas Free Certificate on board if required by Shippers prior to presentation at loading port. Owner undertake to submit the vessel to a further gas free inspection by a local independent surveyor at loading port for their own account. Notice of readiness may be tendered prior to such inspection but if the vessel is found not to be gas free, then laytime not to commence until vessel has obtain Gas Free Certificate. If the vessel has already been berthed at the terminal and then is found not to be gas free by the local surveyor, then the vessel is to vacate the berth immediately and proceed to a safe anchorage for cleaning, all extra expenses for shifting to be for owners' account. Laytime at the loading port not to commence to count until the vessel has passed gas free by the local independent surveyor, even if after the expiry of the turn time. In order to expedite such inspection, Master of combination vessel are recommended to inform the loading port agents 48 hours prior to arrival that a surveyor is required on vessel arrival at or off the terminal.

29. Language / Communication

It is agreed that the English language will be used in notices letter, cables and all other means of communications. All relevant communications between Charterers and Owners shall be made through telex, telegram or Fax.

30. LOI

If the original bills of lading cannot be presented at discharging port, owners/master agree to discharge/release the entire cargo without presentation of the original bills of lading only against Charterers letter of indemnity on their letter-head, with their authorized signature in owners standard P and I form and without bank guarantee or bank endorsement.

Discharge ports shown on the Bills of lading do not constitute a declaration of discharge port and charterers have the right to order the vessel to other ports within the terms of this charter party against charterers LOI in owners' PNI format without bank guarantee/endorsement.

31. ISM Clause

During the currency of this Contract, Owners shall procure that the vessel and "The Company" (as defined by ISM code) shall comply with the requirement of the ISM Code upon request. The Owners shall provide copy of relevant Documents of Compliance (DOC) and Safety Management Certificate (SMC) to Charterers with vessel nomination. Any loss, damage expenses and delay caused by failure or part of Owners or "The Company" to comply with the ISM Code shall be for Owners' account.

32. Commission

May. 27. 2008 2:38PM Lennon, Murphy & Lennon LLC No. 4972 P. 50

M/V "TMT TBN" – C/P DATED 12TH JANUARY 2007 IN TAIPEI

33. Headings

The headings in the Charter Party are for purpose of convenience only and shall not limit or otherwise affect any of the terms or stipulation hereof.

The Charter Party is written in English and signed as performing contract.

IN WITNESS WHEREOF, this Charter Party has been executed by and between Owners and Charterers in two (2) originals, one of each to be retained by Owners and Charterers.

OWNERS:
TMTBULK Co., Ltd., Taipei.

CHARTERERS:

______________________ ______________________

- 11 -

13

CPBS [illegible] | COMPANHIA PORTUÁRIA BAÍA DE SEPETIBA [illegible] | [illegible] | [illegible]

[illegible]

Referência [illegible]

## STATEMENT OF FACTS

VESSEL CHINA PEACE
PORT OF REGISTER HONG KONG
FLAG HONG KONG, CHINA
AGENT [illegible] SHIPPING
DWT [illegible]
BUILT 2006
CPBS - CVRD TERMINAL
PORT OF ITAGUAÍ, BRAZIL

| Event | Date/Time | Event | Date/Time |
|---|---|---|---|
| | | ANCHOR UP AT [illegible] ANCHORAGE | Dec 17th 2007 11:[illegible] LT |
| ARRIVAL AT OUTER ROADS | Nov [illegible] 2007 22:[illegible] LT | BERTHED ALONGSIDE AT [illegible] QUAY | Dec 17th 2007 12:[illegible] LT |
| NOTICE OF READINESS TENDERED | Nov [illegible] 2007 22:[illegible] LT | LOADING OPERATION STARTED | Dec 17th 2007 [illegible] LT |
| DROPPED ANCHOR OUTER ROADS | Nov [illegible] 2007 [illegible] LT | LOADING OPERATION COMPLETED | Dec 18th 2007 20:30 LT |
| PILOT ON BOARD TO INNER ANCHORAGE | Dec [illegible] 2007 [illegible] LT | TOTAL CARGO LOADED IN METRIC TONS | [illegible] |
| ANCHOR UP AT OUTER ROADS | Dec [illegible] 2007 10:[illegible] LT | [illegible] | Dec 18th 2007 |
| DROPPED ANCHOR AT INNER ANCHORAGE | Dec [illegible] 2007 [illegible] LT | [illegible] | [illegible] |
| FREE PRATIQUE GRANTED | Dec [illegible] 2007 [illegible] LT | [illegible] DISCHARGE PORT | [illegible] |
| [illegible] CLEARANCE FROM PORT AUTHORITIES | Dec [illegible] 2007 [illegible] LT | ARRIVAL DRAFTS FORE/AFT | 17.10 [illegible] |
| NOTICE OF READINESS ACCEPTED | Nov [illegible] 2007 22:[illegible] LT | SAILING DRAFTS FORE/AFT | [illegible] |
| PILOT ON BOARD TO LOADING PIER | Dec 17th 2007 10:[illegible] LT | | |
| DISCHARGE PORT | | | [illegible] PORT, CHINA |

| DATE | LOADING TIME START | LOADING TIME END | STOPPED TIME START | STOPPED TIME END | NOTES |
|---|---|---|---|---|---|
| Dec 17th 2007 | - | - | 15:45 | 15:55 | INITIAL DRAFT SURVEY |
| | - | - | 15:55 | 16:05 | SHORE PREPARATION |
| | 16:05 | 24:00 | - | - | LOADING IN PROGRESS |
| Dec 18th 2007 | 00:00 | 17:50 | 17:50 | 19:15 | CHECK DRAFT - TRIMMING CALCULATION |
| | 19:15 | 20:[illegible] | 20:20 | 20:30 | FINAL DRAFT SURVEY |

AGENT'S REMARKS CARGO DOCUMENTS SIGNED ON BOARD C Dec [illegible] 2007 AT [illegible] [illegible] LT

## CARGO RECEIPT

CHINA PEACE

This is to confirm that following cargo was [illegible] on board of the M/V [illegible]
[illegible] in accordance with the draft survey and the [illegible]

| Hold Number | Quantity | Cargo Description |
|---|---|---|
| 1 | 14 344,000 | SFSC |
| 2 | 18 772,000 | SFSC |
| 3 | 19 762,000 | SFSC |
| 4 | 10 501,000 | SFSC |
| 5 | 17 950,000 | SFSC |
| 6 | 18 [illegible],000 | SFSC |
| 7 | 18 [illegible]72,000 | SFSC |
| 8 | 18 431,000 | SFSC |
| 9 | 15 490,000 | |

Consignee/Notify
Cargo SFSC
Consignee TO ORDER
Notify [illegible] IRON [illegible] CO., LTD. TEL [illegible] FAX [illegible]

TOTAL 156,004,000 METRIC TONS
Equivalent to 153,[illegible],554 LONG TONS of 1.016047 [illegible]

[illegible]
Sidney Perez
[illegible]
[illegible] - FOREMAN

CPBS-CVRD TERMINAL

[illegible] CHINA [illegible]

CHINA PEACE SHIPPING LIMITED

AGENT
Luiz [illegible]
[illegible] Shipping [illegible] Ltda.
As Agent Only

日照华海国际船舶代理有限公司
SINO-OCEAN SHIPPING AGENCY RIZHAO

装卸时间事实记录

# LAYTIME STATEMENT OF FACTS

Vessel's name: M/V. CHINA PEACE | Voy No:003 | Port: RIZHAO | Date:3RD FEB.,2008

Cargo: Discharging158,004metric tons of iron ore

| 日期 Date | 星期 Day | 时间 HRS From: | To: | 说明 Descriptions |
|---|---|---|---|---|
| 26TH JAN | SAT | —— | 0618 | Vessel arrived at the anchorage of RIZHAO port and N.O.R was tendered |
| | | 0618 | 2400 | Waiting for berth |
| 27TH JAN | SUN | 0000 | 2400 | Waiting for berth |
| 28TH JAN | MON | 0000 | 2400 | Waiting for berth due to bad weather |
| 29TH JAN | TUE | 0000 | 2400 | Waiting for berth |
| 30TH JAN | WED | 0000 | 2400 | Waiting for berth due to bad weather |
| 31ST JAN | THU | 0000 | 2400 | Waiting for berth |
| 1ST FEB | FRI | 0000 | 1100 | Waiting for berth |
| | | 1100 | 1312 | Vessel heaved up anchor and proceeded to pilot station |
| | | 1312 | 1448 | P.O.B and proceeding to her berth |
| | | —— | 1448 | First line made fast ashore |
| | | 1448 | 1524 | Vessel berthed alongside east no.10 and all lines made fast ashore |
| | | 1524 | 1630 | Quarantine inspection being carried out and free pratique was granted |
| | | 1630 | 1730 | Initial draft survey being carried out and completed |
| | | 1730 | 2400 | Discharging commenced and continued |
| 2ND FEB | SAT | 0000 | 2400 | Discharging continued |
| 3RD FEB | SUN | 0000 | 1115 | Discharging continued |
| | | ...... | 1115 | Discharging completed |
| | | 1115 | 1215 | Final draft survey being conducted and completed |
| | | 1215 | ------ | Waiting for pilot |
| | | ------ | 1408 | P.O.B and vessel sailed from Rizhao port |

1. Ship's GRT: 88930 2. Number of ship's hatches: 9 3. Hatches worked in this port: 1.2.3.4.5.6.7.8.9.

Remarks: Us any delay due to vessel

M/V.CHINA PEACE
CAPTAIN

CHINA PEACE SHIPPING LIMITED HONG KONG M/V.CHINA PEACE

AS AGENT ONLY
SINO-OCEAN SHIPPING AGENCY RIZHAO





On board of m.v. " CHINA PEACE"
At this port, November 28TH 2007
Itaguaí Port – R.J. – Brazil

To Messrs
Companhia Vale do Rio Doce
C/O
CPBS Terminal
Estrada da Ilha da Madeira s/n
Itaguaí – Rio de Janeiro - Brasil

## NOTICE OF READINESS

Kindly be advised that the M.V. "CHINA PEACE" arrived at Sepetiba roads, on November 28TH 2007 at 22:15 hours lt, and she is ready in all respects to load her cargo of about 158,650metric tons of iron ore in bulk.

As to the acceptance of this Notice of Readiness tendered to you on November 28TH, 2007 at 22:15 hours lt, reference shall be made to the relevant Charter Party, which covers the present voyage.

Yours Faithfully,

Master of MV "CHINA PEACE"

*NOR accepted on November 28th 2007 at 22:15 hours LT.*

Alcir Reinaldo Cheq
Inspetor de Embarque FOREMAN

CPBS COMPANHIA PORTUÁRIA BAÍA DE SEPETIBA

NOTICE OF FORCE MAJEURE

Companhia Portuária Baía de Sepetiba – CPBS, operators of the iron ore terminal of Itaguaí port, advises to the ship's agents who represents vessels that usually load at the terminal, and to shippers clients of the terminal and inland carriers, to be relayed to who may be concerned:

During berthing operation of a vessel at the terminal, on 08/DEC/07, at about 09:00, an incident occurred resulting in severe damage to one of the mooring dolphins. As a result we had to stop the berthing/loading operations of the terminal, for safety reasons, and for this reason we are declaring force majeure.

Steps are being taken to re-establish the operations as soon as possible. We anticipate a stoppage of 10 days. We will advise if and when this estimate changes.

Itaguaí, Sunday 09 December 2007

Original signed by
Efrem Daumas
General Manager

Estrada Ilha da Madeira, s/n – Itaguaí – RJ – CEP: 23825-410
Tel: (21) 3781-6310 Fax (21) 3781-6014
e-mail: efrem.daumas@vale.com

PORT: RIZHAO / ~~LANSHAN~~
DATE: 26TH JAN. 2008

TO: SINO-OCEAN SHIPPING AGENCY RIZHAO

# NOTICE OF READINESS

RE: M/V CHINA PEACE

DEAR SIRS,

THIS IS TO ADVISE THAT THE ABOVE VESSEL ARRIVED AT ANCHORAGE AT 0618 HRS ON 26TH JAN. 2008, AND NOW SHE IS IN ALL RESPECTS READY TO LOAD/DISCHARGE HER CARGO IN ACCORDANCE WITH C/P DATED ______

NOTICE OF READINESS WAS TENDERED AT ______
26TH JAN. 2008

MASTER OF M/V CHINA PEACE

NOTICE OF READINESS WAS ~~ACCEPTED~~/RECEIVED AT [illegible]

AS AGENTS ONLY

**M.V. CHINA PEACE**

**SCHEDULE: LAYTIME AND DEMURRAGE CALCULATION**

Cargo Quantity: 158,004 mt[1]

Demurrage Rate: US$230,000 per day pro rata[2]

**LOAD PORT: Itaguai**

Loading rate: 50,000.00 mt per weather working day SHINC[3]

Total time allowed: 3 days 3 hours 51 minutes (3.1601 days or 75.84 hours)[4]

Total time used 19 days 10 hours 15 mins as follows:

From 10.15 29/11[5] to 20.30 18/12[6] = 19 days 10 hours 15 mins; less

Note that no force majeure[7] since Charterers could have loaded from an alternative berth which were available (see paragraph [9] of the claim submissions).

Note that Vessel shifting[8]: 11.12 17/12 to 15.45 17/12 = 4 hours 33 mins; is to count because Vessel is on demurrage prior to this time[9].

Time on Demurrage[10] = 16 days 6 hours 24 minutes = 16.2670 days

Loadport Demurrage at US$230,000 pdpr[11] = **US$3,741,410.77**

Less 3.75% address commission[12] = **US$3,601,107.86**

---

[1] As per loadport SOF

[2] Clause 8.A.; fixture recap dated 9 November 2007

[3] Clause 8.A(c).

[4] 158,004 mt / 50,000 mt per wwd = 3.16008 days or 75.842 hours

[5] Vessel tenders NOR at 22.15 hours and accepted. NOR becomes effective for the purposes of running of laytime after 12 hour turn time: clause 8.A ; fixture recap dated 9 November 2007

[6] Completion of final draft survey as per SOF

[7] Loss of time from stoppage caused by force majeure: clause 23

[8] Time used for sailing from anchorage to wharf till all fastened at the designated loading berth does not count if Vessel on laytime, but counts if Vessel is on demurrage: clause 8.A.a.

[9] Vessel on demurrage from 14.06 hours on 2 December

[10] Total time used of 19 days 10 hours 15 mins less time allowed of 3 days 3 hours 51 minutes

[11] Clause 8.A.; fixture recap dated 9 November 2007

[12] Fixture recap dated 9 November 2007

**DISPORT: Rizhao**

Discharging rate: 27,500.00 mt per weather working day SHINC[13]

Total time allowed: 5 days 17 hours 54 minutes (5.7456 days or 137.89 hours)[14]

Total time used 6 days 23 hours 33 minutes as follows:

(a) 06.18 27/01[15] to 11.15 3/2[16] = 7 days 4 hours 57 minutes; less

(b) Vessel shifting[17]: 11.00 1/2 to 15.24 1/2 = 4 hours 24 minutes;

(c) Draft survey[18]: 16.30 1/2 to 17.30 1/2 = 1 hour

Time on Demurrage[19] = 1 day 5 hours 39 minutes = 1.2367 days

Loadport Demurrage at US$230,000 pdpr[20] = **US$284,199.50**

Less 3.75% address commission[21] = **US$273,542.02**

---

[13] Clause 8.B.

[14] 158,000 mt / 27,500 mt per wwd = 5.7456 days or 137.89 hours

[15] NOR tendered 06.18 hours 26 January. Laytime commences 24 hours after tendering NOR; clause 8.B.a.

[16] Completion of discharge

[17] Time used for sailing from anchorage to wharf till all fastened at the designated loading berth does not count: clause 8.B.b.

[18] Time used for draft survey during discharging not to count as laytime: clause 8.B.b.

[19] Total time used of 6 days 23 hours 33 minutes less time allowed of 5 days 17 hours 54 minutes

[20] Clause 8.A.; fixture recap dated 9 November 2007

[21] Fixture recap dated 9 November 2007

----- Original Message -----
From: MIT TAIPEI/OPS TEAM
To: ops@pacificbulk.com
Sent: Monday, April 07, 2008 4:26 PM
Subject: MV "CHINA PEACE" / TMT / CPDD 071109 / 5% BAL FRT + DEM

FM: MIT TAIPEI - OPS TEAM - Ref: 080407-SAMMY-4946.
TO: PBS

ATTN: MS. SUN MIN/GENERAL MANAGER
MR. MICHAEL TONG

RE: MV CHINA PEACE/TMT -CPDD 09/NOV/2007
===
RCVD FLWG FM CHTRS:-

///QTE

Understand that Lawyers are handling this case.

But as per charterer's request, they would like to get the confirmation from owner for non-disputed part.

30/04/2008

## Laytime Calculation

### Loading Sepetiba Bay

| | | | |
|---|---|---|---|
| Vessel | China Peace | Owner | PACIFIC BULK SHIPPING LTD. BAHAMAS |
| Ref | Voyage 20070912 (2007/0574) | Charterer | TMTBULK CO., LTD. |
| CPDate | 09Nov2007 | Cargo | Iron ore |

Port Load - Sepetiba Bay Iron ore 158,004.000 MT at 50,000.00 MT/d (SHINC)
B/L Date 18Dec2007
Demurrage Terms 230,000 USD per Day (Always on Demurrage)

| | | | |
|---|---|---|---|
| Notice tendered | 28Nov2007 22:15 | Loading commenced | 17Dec2007 16:05 |
| Loading completed | 18Dec2007 20:20 | Sailed | 19Dec2007 00:00 |
| Time To Count From | 29Nov2007 10:15 | Time To Count To | 18Dec2007 20:30 |

| Day | Date | From | To | Description | Time | Pcnt | Laytime | Demurrage |
|---|---|---|---|---|---|---|---|---|
| Thu | 29Nov2007 | 10:15 | 24:00 | Time Counting | 13:45 | 100 | 13:45 | |
| Fri | 30Nov2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Sat | 01Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Sun | 02Dec2007 | 00:00 | 14:06 | Time Counting | 14:06 | 100 | 14:06 | |
| | | | | — ON DEMURRAGE 02Dec2007 14:06 — | | | | |
| Sun | 02Dec2007 | 14:06 | 24:00 | Time Counting | 09:54 | 100 | | 09:54 |
| Mon | 03Dec2007 | 00:00 | 10:06 | Time Counting | 10:06 | 100 | | 10:06 |
| Mon | 03Dec2007 | 10:06 | 13:30 | Shifting | 03:24 | 0 | 00:00 | |
| Mon | 03Dec2007 | 13:30 | 24:00 | Time Counting | 10:30 | 100 | | 10:30 |
| Tue | 04Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Wed | 05Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Thu | 06Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Fri | 07Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Sat | 08Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Sun | 09Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Mon | 10Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Tue | 11Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Wed | 12Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Thu | 13Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Fri | 14Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Sat | 15Dec2007 | 00:00 | 20:35 | WB (Disputed) | 20:35 | 0 | 00:00 | |
| Sat | 15Dec2007 | 20:35 | 24:00 | Time Counting | 03:25 | 100 | | 03:25 |
| Sun | 16Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Mon | 17Dec2007 | 00:00 | 11:12 | Time Counting | 11:12 | 100 | | 11:12 |
| Mon | 17Dec2007 | 11:12 | 15:45 | Shifting | 04:33 | 0 | 00:00 | |
| Mon | 17Dec2007 | 15:45 | 24:00 | Time Counting | 08:15 | 100 | | 08:15 |
| Tue | 18Dec2007 | 00:00 | 18:50 | Time Counting | 18:50 | 100 | | 18:50 |
| Tue | 18Dec2007 | 18:50 | 19:15 | Trimming | 00:25 | 0 | 00:00 | |
| Tue | 18Dec2007 | 19:15 | 20:30 | Time Counting | 01:15 | 100 | | 01:15 |

| | | | |
|---|---|---|---|
| DEMURRAGE | 9 Days 1 Hours 27 Mins (9.0604167) | Time Allowed | 03:03:51 |
| | at USD 230,000/d | Time Used | 12:05:18 |
| | = USD 2,083,895.83 | On Demurrage | 09:01:27 |

May. 27. 2008 2:39PM Lennon, Murphy & Lennon LLC No. 4872 P. 60

Laytime Calculation 第2頁，共2頁

Generated by SoftMAR

file://C:\Documents and Settings\shih\Local Settings\Application Data\SoftMAR\Laytime\lay... 2008/4/7
23

Laytime Calculation 第1頁，共1頁

## Laytime Calculation

### Discharging Rizhao

| | | | |
|---|---|---|---|
| Vessel | China Peace | Owner | PACIFIC BULK SHIPPING LTD. BAHAMAS |
| Ref | Voyage 20070012 (2007/0574) | Charterer | TMTBULK CO., LTD. |
| CPDate | 09Nov2007 | Cargo | Iron ore |

Port Discharge - Rizhao Iron ore 158,004.000 MT at 27,500.00 MT/d (SHINC)

Demurrage Terms 230,000 USD per Day (Always on Demurrage)

Despatch Terms 115,000 USD per Day (Working Time Saved)

| | | | |
|---|---|---|---|
| Notice tendered | 26Jan2008 06:18 | Discharging commenced | 01Feb2008 17:30 |
| Discharging completed | 03Feb2008 11:15 | Sailed | 03Feb2008 14:08 |
| Time To Count From | 27Jan2008 06:18 | Time To Count To | 03Feb2008 11:15 |

| Day | Date | From | To | Description | Time | Pcnt | Laytime | Despatch |
|---|---|---|---|---|---|---|---|---|
| Sun | 27Jan2008 | 06:18 | 24:00 | Time Counting | 17:42 | 100 | 17:42 | |
| Mon | 28Jan2008 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Tue | 29Jan2008 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Wed | 30Jan2008 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Thu | 31Jan2008 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Fri | 01Feb2008 | 00:00 | 11:00 | Time Counting | 11:00 | 100 | 11:00 | |
| Fri | 01Feb2008 | 11:00 | 15:24 | Shifting | 04:24 | 0 | 00:00 | |
| Fri | 01Feb2008 | 15:24 | 16:30 | Time Counting | 01:06 | 100 | 01:06 | |
| Fri | 01Feb2008 | 16:30 | 17:30 | Draft survey | 01:00 | 0 | 00:00 | |
| Fri | 01Feb2008 | 17:30 | 24:00 | Time Counting | 06:30 | 100 | 06:30 | |
| Sat | 02Feb2008 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Sun | 03Feb2008 | 00:00 | 11:15 | Time Counting | 11:15 | 100 | 11:15 | |
| | | | | --- ON DESPATCH 03Feb2008 11:15 --- | | | | |
| Sun | 03Feb2008 | 11:15 | 24:00 | Time Saved | 12:45 | 100 | | 12:45 |
| Mon | 04Feb2008 | 00:00 | 05:36 | Time Saved | 05:36 | 100 | | 05:36 |

DESPATCH 0 Days 18 Hours 21 Mins (0.7645833)
at USD 115,000/d
= USD 87,927.08

| | |
|---|---|
| Time Allowed | 05:17:54 |
| Time Used | 04:23:33 |
| On Despatch | 00:18:21 |

Generated by SoftMAR

24

----- Original Message -----
From: pacific bulk _ sun
To: MIT TAIPEI/OPS TEAM
Cc: COMM@pacificbulk.com
Sent: Monday, April 07, 2008 5:19 PM
Subject: Re: MV "CHINA PEACE" / TMT / CPDD 071109 / 5% BAL FRT + DEM

Dear Sammy,

Thanks for your kind assistance. Below for Chtrs.

"Owners thank Chtrs for their kind message dated April 7th 2008. Owners own version of non-disputed part is a bit larger than Chtrs' version, however we would later today send Chtrs an updated invoice for non-disputed part as per Chtrs shortly and leave the balance for future. "

Best regards,
Min Sun
Commercial Department
Pacific Bulk
Tel : +(852)2581-1699
Fax : +(852)2581-1799

30/04/2008

----- Original Message -----
From: pacific bulk - accts
To: MIT
Cc: Pacific Bulk - ops ; Pacific Bulk - chrtg
Sent: Tuesday, April 08, 2008 5:22 PM
Subject: MV CHINA PEACE/TMT -- DEM INV

TO: MIT TAIPEI
FM: PACIFIC BULK CHRTG
DD: 08/APR/08

ATT: PETER + SAMMY

RE: MV CHINA PEACE/PBS -- 5% BAL FRT + DEMURRAGE SETTLEMENT

PLS FIND/CHECK ATTACHED FRT INV NO.: PAC323/07-3 & PAC323/07-4.
KINDLY CONFIRM IN ORDER.

CHRTRS PLS ADV PAYMENT SCHEDULE DTLS FOR OWRS EASY TRACING FUNDING.
PROMPT PAYMENT OF THE INV WLD BE APPRECIATED.

TKS/BRGDS.
FRANK FOR MR. TONG
AS AGTS FOR PBS ONLY

---

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

30/04/2008

# PACIFIC BULK SHIPPING LTD.

c/o Rm 2212, 22/F West Tower Shun Tak Centre, 168-200 Connaught Road C. HK
Tel : (852) 2581-1699 Fax : (852) 2581-1799
E-Mail : shipping@pacificbulk.com Telex : 94075876 BULK G

To: TMT Bulk Co., Ltd

Inv. No.: PAC323/07-3
Inv. Date: 07-Apr-08
Due Date: 04-Mar-08

## FREIGHT INVOICE (REVISED)

| Description | | | Amount (USD) |
|---|---|---|---|
| Vessel: | M.V. "China Peace" | | |
| C/P dated: | 9-Nov-07 | | |
| B/L DD: | 18-Dec-07 | | |
| Voyage: | Itaguai Port, Brazil / Rizhao Port, China | | |
| Cargo: | 158,004.000 mts SFSC | | |
| Freight: | 158,004.000 MT x USD 101.60 PMT = | $16,053,206.40 | |
| Less: | 1st received - 08 Jan, 2008 | ($14,588,650.60) | |
| Less: | 3.75% Addcomm. | ($601,995.24) | |
| Less: | Port Disbursment for one disport | ($90,000.00) | |
| Add: | Demurrage at loadport - Itaguai | $3,722,722.50 | |
| Add: | Demurrage at disport - Rizhao | $284,199.50 | |
| Less: | 2nd received - 14 Mar, 2008 | ($772,545.56) | |
| DISPUTED AMOUNT to be issued in seperated invoice | | ($2,010,953.25) | |
| Total in Owners favour | | | $1,995,983.75 |

Say Total U.S. Dollars One Million Nine Hundred Ninety-Five Thousand Nine Hundred and Eighty-Three and Cents Seventy-Five Only.

Please remit above amount to our bank account as follows:

Bank: HSBC BANK, HONG KONG
Swift Code: HSBCHKHHHKH
In favour of: Pacific Bulk Shipping Co., Ltd.
USD A/C No.: 459-212650-838
Ref: M.V. "China Peace" / PAC323/07-3 - Dem/Des Settlement

Thanks your attention and please confirm your remittance by return

*For and on behalf of*
PACIFIC BULK SHIPPING LIMITED

*Authorized Signature(s)*

# PACIFIC BULK SHIPPING LTD.

c/o Rm 2212, 22/F West Tower Shun Tak Centre, 168-200 Connaught Road C. HK
Tel : (852) 2581-1699 Fax : (852) 2581-1799
E-Mail : shipping@pacificbulk.com Telex : 94075876 BULK G

To: TMT Bulk Co., Ltd

Inv. No.: PAC323/07-4
Inv. Date: 07-Apr-08
Due Date: 04-Mar-08

## FREIGHT INVOICE

| Description | | | Amount (USD) |
|---|---|---|---|
| Vessel: | M.V. "China Peace" | | |
| C/P dated: | 9-Nov-07 | | |
| B/L DD: | 18-Dec-07 | | |
| Voyage: | Itaguai Port, Brazil / Rizhao Port, China | | |
| Cargo: | 158,004.000 mts SFSC | | |
| DISPUTED AMOUNT | | $2,010,953.25 | |
| Total in Owners favour | | | $2,010,953.25 |

Say Total U.S. Dollars Two Million and Ten Thousand Nine Hundred and Fifty-Three and Cents Twenty-Five Only.

Please remit above amount to our bank account as follows:

| | |
|---|---|
| Bank : | HSBC BANK, HONG KONG |
| Swift Code: | HSBCHKHHHKH |
| In favour of: | Pacific Bulk Shipping Co., Ltd. |
| USDA/C No.: | 459-212650-838 |
| Ref: | M.V. "China Peace" / PAC323/07-4 - Dem/Des Settlement |

Thanks your attention and please confirm your remittance by return

*For and on behalf of*
PACIFIC BULK SHIPPING LIMITED

Authorized Signature

IN THE MATTER OF
THE ARBITRATION ACT 1996
AND IN THE MATTER OF ARBITRATION

BETWEEN:

PACIFIC BULK SHIPPING LIMITED
Claimant / Shipowner

-and-

TMT BULK CO. LTD
Respondent / Charterer

*"M/V CHINA PEACE"*

---

CLAIM SUBMISSIONS

---

MFB
45 Moorfields
London EC2Y 9AE

Tel: 020 7330 8000
Fax: 020 7256 5778
Ref: CHA/0183/281190

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PACIFIC BULK SHIPPING LTD.,

Plaintiff,

- against -

TMT BULK CO. LTD. a/k/a TMT BULK and DUCKY EXPRESS SHIPPING S.A.,

Defendants.

08 Civ. ____

ECF CASE

## VERIFIED COMPLAINT

Plaintiff, PACIFIC BULK SHIPPING LTD., (hereinafter "Plaintiff") by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Verified Complaint against the Defendants, TMT BULK CO. LTD. a/k/a TMT BULK ("TMT") and DUCKY EXPRESS SHIPPING S.A. ("DUCKY")(collectively referred to as "Defendants"), alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 *et seq.*) and/or the Federal Arbitration Act (9 U.S.C. § 1 *et seq.*).

2. At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under foreign law.

3.    At all material times Plaintiff was the Owner of the ocean going motor vessel "CHINA PEACE" (hereinafter the "Vessel").

4.    Upon information and belief, Defendant TMT was, and still is, a foreign corporation, or other business entity organized and existing under foreign law with an address in Taipei.

5.    Upon information and belief, Defendant DUCKY was, and still is, a foreign corporation, or other business entity organized and existing under foreign law, and was, and still is, a trade name, alias, alter-ego, paying agent, receiving agent, and/or joint venturer of TMT who is now, or will soon be, holding assets belonging to TMT.

6.    Pursuant to a charter party dated November 9, 2007 Plaintiff chartered the Vessel to Defendant TMT for the carriage of iron ore in bulk.

7.    During the course of the charter, disputes arose between the parties regarding TMT's failure to pay freight and demurrage charges due and owing under the charter party.

8.    As a result of TMT's breach of charter party contract, Plaintiff has sustained damages in the principal amount of $3,874,649.88, exclusive of interest, arbitration costs and attorneys fees. *See claim submission annexed hereto as Exhibit "1."*

9.    In accordance with the Charter Party, disputes between the parties are to be submitted to arbitration in London with English law to apply.

10.    Despite due demand, TMT has failed to pay the amounts due and owing to Plaintiff.

11.    Thus, Plaintiff has commenced arbitration on its claim(s) and appointed an arbitrator.

12. This action is brought in order to obtain jurisdiction over Defendant(s) and also to obtain security for Plaintiff's claims and in aid of arbitration proceedings.

13. Interest, costs and attorneys' fees are routinely awarded to the prevailing party under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for recovery of these items as part of an award in favor of the prevailing party. As best as can now be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing party:

| | | |
|---|---|---|
| A. | Principal claim: | |
| | Load port demurrage: | $3,601,107.86 |
| | Discharge port demurrage: | $ 273,542.02 |
| B. | Interest on claims:<br>3 years at 7.5%, compounded quarterly | $ 967,563.53 |
| C. | Estimated attorney's fees and expenses and arbitration costs: | $ 750,000.00 |
| Total | | **$ 5,592,213.41** |

14. Defendant TMT is the alter-ego of Defendant Ducky because it dominates and disregards Ducky's corporate form to the extent that TMT is actually carrying on Ducky's business and operations as if the same were its own, or vice versa.

15. Upon information and belief, Defendant Ducky is a shell-corporation through which Defendant TMT conducts its business, or vice versa.

16. Upon information and belief, Defendant TMT has no separate, independent identity from Defendant Ducky.

17. Upon information and belief, TMT uses Ducky as a "paying/receiving agent" or "pass through" entity such that it can insulate itself from creditors relating to its commercial obligations and in particular its vessel charters.

18. It is not general practice in the maritime community, nor any where else, for independent companies to make or receive large payments on behalf of other independent companies.

19. Payments sent or received on behalf of another independent company are suggestive of a relationship that is not "arms length."

20. Upon information and belief, Ducky makes payments on TMT's behalf where Ducky has absolutely no contractual obligation to TMT's creditors.

21. Upon information and belief, Ducky made a freight payment to Plaintiff amounting to 95% of the freight owed under the subject charter party where Ducky had absolutely no contractual obligation to do so.

22. Furthermore, upon information and belief, Ducky has made payments to TMT's creditors under other charter parties where Ducky has absolutely no contractual obligation to do so.

23. Upon information and belief, Defendant TMT instructed Plaintiff to make freight payments under a separate, unrelated charter party to the account of Ducky.

24. Based on the foregoing, as well as other activities, TMT and Ducky should be considered as a single economic unit with no corporate distinction between or among them, rendering each liable for the debts of the other, and all assets of Ducky susceptible to attachment and/or restraint for the debts of TMT.

25. By virtue of the foregoing, Ducky is properly considered a party to the subject contract as the trade name, alias, alter ego, paying agent, and/or prime mover and controller of Defendant TMT.

26. In the further alternative, Defendants are partners and/or joint venturers.

27. In the further alternative, Defendants are affiliated companies such that Ducky is now, or will soon be, holding assets belonging to TMT, or vice versa.

28. The Defendants cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant(s) have, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of one or more garnishees which are believed to be due and owing to the Defendants.

29. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any assets of the Defendant(s) held by the aforesaid garnishee for the purpose of obtaining personal jurisdiction over the Defendants, and to secure the Plaintiff's claims as described above.

**WHEREFORE,** Plaintiff prays:

A. That process in due form of law issue against the Defendants, citing them to appear and answer under oath all and singular the matters alleged in the Verified Complaint;

B. That the Court retain jurisdiction to compel the Defendant(s) to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

C. That pursuant to 9 U.S.C. §§ 201. *et seq.* this Court recognize and confirm any judgment rendered on the claims had herein as a Judgment of this Court;

D. That since the Defendants cannot be found within this District pursuant to

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds held by any garnishee within the District which are due and owing to the Defendant(s), in the amount $ **5,592,213.41** calculated to date to secure the Plaintiff's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

E. That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court

F. That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

G. That in the alternative, this court enter Judgment against the Defendants on the claims set forth herein;

H. That this Court award Plaintiff its attorney's fees and costs of this action; and

I. That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: May 27, 2008
New York, NY

The Plaintiff,
PACIFIC BULK SHIPPING LTD.,

By: Anne C. Levasseur

Ann C. Levasseur
Nancy R. Peterson
Patrick F. Lennon
LENNON, MURPHY & LENNON, LLC
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 – phone
(212) 490-6070 – fax
acl@lenmur.com
nrp@lenmur.com
pfl@lenmur.com

## ATTORNEY'S VERIFICATION

State of New York )<br>
) ss.: City of New York<br>
County of New York )

1. My name is Anne C. Levasseur.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an attorney in the firm of Lennon, Murphy & Lennon, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated: May 27, 2008<br>
New York, NY

Anne C. Levasseur<br>
Anne C. Levasseur

EXHIBIT "1"

**IN THE MATTER OF THE ARBITRATION ACT 1996**
**AND IN THE MATTER OF ARBITRATION**

**BETWEEN:**

**PACIFIC BULK SHIPPING LIMITED**

**Claimant / Shipowner**

**-and-**

**TMT BULK CO. LTD**

**Respondent / Charterer**

***"M/V CHINA PEACE"***

**CLAIM SUBMISSIONS**

1. The Claimant's claim for demurrage arises out of the carriage of a cargo of iron ore on the vessel MV CHINA PEACE ("the Vessel").

2. Pursuant to a fixture recap, contained in message dated 9 November 2007 ("the Charter") [1-13], Pacific Bulk Shipping Limited chartered the Vessel to TMT Bulk Co. Ltd for the carriage of 160,000 mt (10% moloo) iron ore in bulk for a single voyage PDM/Qingdao.

Contractual provisions

3. The terms of the Charter, to which the Claimant shall refer for its full terms and effect, included the following provisions:

Message of 9 November 2007

"- 160,000mt 10% moloo iron ore in bulk
- PDM/Qingdao
- Laycan 24 Nov to 4 Dec 2007
- Freight: USDXX. 00/PMT bss PDM/Qingdao
- L/D Scale load/27500 shinc
(pdm: 40 HOURS FOR 1st 120,000WMT AND 1 HOUR OR PRO-RATA FOR EACH 5,000 WMT EXCEEDING 120,000 MT TT 12HRS USC ATUTC)
- 12 hrs TT load/24 hrs disch
- Other load/discharge ports to be calculated on open book basis to arrive at same timecharter equivalent...

- demurrage USD230,000 hdlts bends...
- 3.75% addcomm + 1.25PCT to MIT.
- owise as per chtrs blb c/p with logical amendments except for-...

Charterparty of 12 January 2007

8. **Demurrage and Despatch Clause**

Demurrage and despatch shall be calculated on basis of the statement of facts made by Agents at loading port entrusted by Owners and mutually confirmed by Master and Loading and Discharging Port Authority.

8A. Loading Port

Laytime at loading port is non-reversible.

Loading rate (scale load): ..

c) At Sepetiba: 50,000 metric tons per weather working day, Sundays and holidays included...,

12hours turn time, unless sooner commenced, any time used to count at load port.

Demurrage rate: US$ 230,000 per day or pro rata for part of a day for laytime over-used.

...

8.A.a. The following time will not count as laytime at loading ports:-

- time used for sailing from anchorage to wharf till all fastened at the designated loading berth
- time used for joint inspection
- time used for draft survey during loading
- stoppage caused by adjusting ballast (or deballasting)
- stoppage caused by bad weather (bad weather will be defined according to the declaration of terminal/port authority)
- stoppage or partial stoppage caused by Owners and partial stoppage as pro rata
- stoppage caused by Force Majeure

8.B. Discharging Ports

Discharging rate: 27,500 metric tons per weather working day of 24 consecutive hours Sunday and holiday included with 24 hours turn time each discharging port, unless sooner commence and half time to count.

Demurrage rate: US$230,000 per day or pro rata for part of a day for laytime over-used.

..

8.B.a. At the discharging ports, Notice of readiness shall be tendered any time day or night Sundays and holidays included, provided the vessel is ready for discharging. Laytime shall commence 24 hours after tendering the Notice of Readiness, unless sooner commenced.

8.B.b. The following time will not count as laytime at discharging ports:-

- time used for sailing from anchorage to wharf till all fastened at the designated discharging berth
- time used for shifting between berth to berth
- time used for draft survey during discharging
- stoppage caused by adjusting ballast (or deballasting)
- stoppage caused by bad weather (bad weather will be defined according to the declaration of terminal/port authority)

- stoppage or partial stoppage caused by Owners and partial stoppage as pro rata
- stoppage caused by Force Majeure

**23. Strike and Force Majeure Clause**

23.a At loading port:

The time lost as a result of all or any of the following causes under shall not count as laytime and demurrage VIZ: wars, rebellions, tumults, civil commotions, strikes, insurrections, political disturbances, epidemics and quarantine, riots, lock-out, stoppage miners, workmen, railway employees, stevedores, seamen or any other workers essential to the working, carriage, delivery, shipment, interruptions of railway transport, whether partial or general, landslips, floods, intervention of sanitary, customs and/or other constituted authorities or other causes beyond Charterers' control preventing cargo preparation, loading or berthing vessel. Once a nominated vessel has been confirmed by Charterers, any loss of vessel's schedule incurred by strikes of the miners or company employees is to be considered as Force Majeure.

**24. Arbitration**

Any disputes arising under the Contract shall be settled amicably. In case no such settlement can be reached, the matter in dispute shall be referred to three persons at London and according to English law. One chosen by each of the parties hereto and the third by the two so chosen, their decision or that of the two of them shall be final, and for the purpose of enforcing any awards, this agreement may be made a rule of the court, the arbitrators shall be commercial men.'

<u>Relevant background facts</u>

4. All references to times for the loadport of Itaguai are, unless stated otherwise, to the CPBS Statement of Facts [14] and, for the disport of Rizhao, to the Sino-Ocean Shipping Agency Rizhao Laytime Statement of Facts dated 3 February 2008 [15].

5. The vessel arrived at the outer anchorage for the port of Itaguai at 22.15 hours on 28 November 2007.

6. NOR was tendered to the shipper, Companhia Vale do Rio Doceby ("CVRD"), care of CPBS Terminal, by the Master at 22.15 hours on 28 November [16]. NOR was accepted orally by CPBS, the wholly owned-subsidiary of CVRD, as agent for and on behalf of the Respondent and/or CVRD at 22.15 hours. The NOR was subsequently signed and stamped by CPBS in the same capacity upon berthing of the vessel on 17 December.

7. The vessel remained at the outer anchorage until 10.06 hours on 3 December when she proceeded to the inner anchorage, arriving there at 13.30 hours on 3 December. Port Authority clearance was given at 14.35 hours and free pratique granted at 15.45 hours on 3 December.

8. On 9 December CPBS gave notice that due to an incident which occurred at about 09.00 hours on 8 December causing severe damage to one of the mooring dolphins at the

berthing/loading terminal, all berthing/loading operations at the terminal were being stopped for a period of approximately 10 days [17]. No notice of force majeure was ever given by shippers CVRD or by Charterers.

9. At 11.12 hours on 17 December the vessel weighed anchor at the inner anchorage and berthed alongside the CPBS terminal at 15.45 hours. Loading operations commenced at 16.05 hours on 17 December and ceased at 20.20 hours on 18 December. The final draft survey was completed at 20.30 hours on 18 December.

10. As per the SOF, a total of 158,004.00 mt were loaded on the vessel.

11. The vessel sailed for the disport of Rizhao, arriving there at the anchorage at 06.18 hours on 26 January 2008. NOR was tendered and received by Sino-Ocean Shipping Agency Rizhao at 06.18 hours [18].

12. The vessel weighed anchor at 11.00 hours on 1 February and berthed alongside at 15.24 hours. Free pratique was granted at 16.30 hours. The initial draft survey was carried out between 16.30 and 17.30 hours.

13. Discharge commenced at 17.30 hours and continued until 11.15 hours on 3 February. The final draft survey was carried out between 11.15 hours and 12.15 hours. The vessel sailed at 14.08 hours on 3 February 2008.

Demurrage

14. For the avoidance of the doubt, the Claimant relies upon the loadport laytime calculations as set out in the Schedule [19-20] attached to these claim submissions and not to the Itaguai loadport laytime calculation enclosed with the invoice of 12 February 2008.

15. Pursuant to clause 8.A. of the Charter the Respondent was allowed 3 days 3 hours 51 minutes laytime to load the cargo[1] and, pursuant to clause 8.B., 5 days 17 hours 54 minutes of laytime to discharge the cargo[2].

16. In breach of these clauses it took 19 days 10 hours 15 minutes to load the cargo and 6 days 23 hours 33 minutes to discharge the cargo, as fully set out in the attached Schedule headed

[1] See the calculation at footnote 4 of the Schedule.

[2] See the calculation at footnote 14 of the Schedule.

"*Laytime and Demurrage calculation*". Demurrage is therefore payable at the Charterparty rate of US$230,000 pdpr for:

(a) 16 days 6 hours 24 minutes at the loadport, being US$3,741,410.77. Giving credit for 3.75% address commission, the net sum payable by the Respondent to the Claimant in respect of demurrage is US$3,601,107.86; and

(b) 1 day 5 hours 39 minutes at the disport, being US$284,199.50. Giving credit for 3.75% address commission, the net sum payable by the Respondent to the Claimant in respect of demurrage is US$273,542.02.

Agreement on undisputed laytime

17. On 7 April 2008 the parties reached an agreement in relation to a portion of the sums outstanding that was undisputed. This was based on a message received from the Respondent which included two schedules setting out the non-disputed laytime at the loadport and discharge port [21-24]. These two schedules show that the undisputed laytime is, in total, US$1,995,968.75[3]. On 7 April the Claimant accepted the undisputed elements of Charterers' laytime schedule in the following terms:

> "Owners thank Chtrs for their kind message dated April 7th 2008. Owners own version of non-disputed part is a bit larger than Chtrs' version, however we would later today send Chtrs an updated invoice for non-disputed part as per Chtrs shortly and leave the balance for future." [25]

18. On 8 April the Claimant sent two invoices, numbers PAC323/07-3 and PAC323/07-4 [26-28] which reflected the undisputed laytime as agreed with the Respondent. The outstanding undisputed balance was US$1,995,968.80[4]. This is due and owing to the Claimant pursuant to the agreement reached on 7 April 2008 in relation to the undisputed sums.

---

[3] This figure being the sum of the loadport demurrage of US$2,083,895.83 less the disport despatch claimed of US$87,927.08.

[4] This figure can be derived from invoice PAC323/07-3 as: the difference between the Itaguai loadport demurrage of US$3,722,722.50 plus the Rizhao disport demurrage of US$284,199.50 less the disputed amount of US$2,010,953.25.

Conclusion

19. In breach of clause 10 of the Charter, and the agreement reached on 7 April 2008, the Respondent has not paid to the Claimant the sums claimed for demurrage whether in the amount set out in the invoice of 12 February 2008, as set out above, as agreed on 7 April 2008, or at all.

20. Further, the Claimant claims and is entitled to interest on such sums as are awarded to it for such period and at such rate as the Tribunal considers appropriate pursuant to section 49 of the Arbitration Act 1996.

**AND THE CLAIMANT / SHIPOWNER CLAIMS:**

(1) Demurrage in the sum of **US$3,674,649.58**;

(2) Interest pursuant to section 49 of the Arbitration Act, 1996;

(3) Costs.

MFB

SERVED this 20th day of May 2008 by MFB, London.

Solicitors for the Claimant / Shipowner.

From: pacific bulk -- tokeliu [chrtg@pacificbulk.com]

Sent: 10 December 2007 12:35

Subject: Fw: CHINA PEACE / TMT = CLEAN RECAP =

FM: MIT TAIPEI - CAPE-PMX TEAM - Ref: 071109-LS4217.
TO: PACIFIC BULK SHIPPING

ATTN: MR. LIU YONG REN

RE: MV. CHINA PEACE/TMT - CPDD: 9/NOV 2007.
===

RETELCONV PLSD TO CFM CLEAN FIXTURE ASF:-

-MV. CHINA PEACE
BUILT 2005
D/W 174,413.4MT ON 18.1M SSW
LOA 289.00M BEAM 45.00M
TPC 119.21MT ON 18.1M
9 HO 9 HA
GRAIN CAPACITY 193,247CBM
-AA-

- A/C TMT BULK CO., LTD
- 150,000mt 10% molco iron ore in bulk
- PDM/Qingdao
- Laycan 24 Nov to 4 Dec. 2007
- Freight: USDXX.00/PMT bss PDM/Qingdao
- L/D scale load/27500 shinc
  (pdm : 40 HOURS FOR 1ST 120,000WMT AND 1 HOUR OR PRO-RATA FOR EACH 5,000 WMT EXCEEDING 120,000 MT TT 12HRS USC ATUTC)
- 12 hrs TT load/24 hrs TT disch
- Other load/discharge ports to be calculated on open book basis to arrive at same timecharter equivalent
- 95 pct of freight payable w/i 8 banking days after s/rl bs/l marked 'freight payable asp c/p'
- demurrage USD230,000 hdlte bends
- port d/a lumpsum usd 90,000 for port disbursement at one dischg port and usd 120,000 for port disbs at two dischg ports which will be deducted from initial freight payment w/o supporting voucher.
- 3.75% addcomm + 1.25PCT to MIT.
- owise as per chtrs btb c/p with logical amendments except for:-

CL 2. THE LAST SENTENCE 'In case any survey at loading port causing by vessel's age and condition, Notice of Readiness will only be allowed to tender after such survey granted.' DELETE

CL 8.B. "25,000" REPLACED BY "27,500"

CL 8B.f. Insert "and time" after words "Expenses"

CL 9. DELETE 3-8 LINES FM "FREIGHT FOR OTHER LOADING PORT:... (BASIS 17.1 METER DRAFT)"

END RECAP

TKS VM YOUR KIND SUPPORT.

TKS & B RGDS

MIT Cape-Pmx desk : charter@mittpe.com.tw
------------------------------------------------------------------------
TEL +886-2-87125289

| | | | | |
|---|---|---|---|---|
| Roger Wang | (D) | +886-2-3518 5783 | (M) | +886-910 068 197 |
| Vickie Fang | | 5785 | | 913 889 306 |
| Lynn Shih | | 5787 | | 932 013 060 |

PCCW IMS Virus Control Center, powered by Trend Micro, scans all your attachment for known viruses.

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

# Charter Party

## dated 12th January, 2007

| | |
|---|---|
| Owners | : TMTBULK Co., Ltd., Taipei |
| Charterers | : |
| Performing Vessel | : M.V. "TMT TBN" |
| Loading Port | : Tubarao or Ponta Da Madeira or Guaiba International Terminal or Sepetiba (which to be renamed as Itaguai) or Ubu, Brazil |
| Discharging Port | : Options in China |

M/V "TMT TBN" – C/P DATED 12TH JANUARY 2007 IN TAIPEI

This Contract, dated 12th January 2007 in Taipei is concluded by and between ____________ as Charterers (hereinafter referred to as Charterers"), and TMTBULK Co., Ltd., Taipei as Owners (hereinafter referred to as "Owners").

**WITNESSETH THAT:**
This is a Charter Party with Owners for the shipment of IRON ORE from (See Clause 7.A.), to (See Clause 7.B.).

WHEREAS, Charterers undertake to provide and Owners undertake to transport on the terms and conditions are set forth as follows.

1. Definitions

   In this Charter Party, unless otherwise defined, the terms should have following meanings:

   1.a. "Ore" - means iron ore in bulk including iron ore concentrates in bulk, and fine, pellets, lump in bulk. Their quality, nature and shipping conditions are within IMO regulation, but always excluding DRI/DRIP/HBI and Sponge Iron Ore.
   1.b. "Dollars" and "Cents" - means respectively dollars and cents in lawful money of the United States of America.
   1.c. "Contract cargo" – means (See Clause 3 and 4).
   1.d. "Business Day" - means days excluding Saturdays, Sundays, public holidays and bank holidays in china.

2. Vessels To Be Used

   M.V. "TMT TBN" – maximum 18 years

   Owners confirm performing vessel will be either owners' period-in vessel or time charter-in vessel or voyage charter-in vessel. And owners confirm that each vessel nominated will be under owners' control and the period will be longer than each shipment.

   The operating vessel should be owners controlled or chartered bulk carriers or ore carriers, or OBO or ore-oil combination carriers, seaworthy, cargo worthy, tight, staunch, and strong suitable for intended voyage and suitable for ordinary grab discharging and shall be in the highest classification for vessels of their age and type with Lloyds, ABS or equivalent. All certificates of the nominated vessel shall be valid till the relevant voyage is complete.

   Owners guarantee the vessel is fitted for Iron Ore trade between Brazil and China and comply with all loading and discharging ports regulations and having all valid certificates, etc. All time/costs/expenses incurred in not complying with the regulations to be for Owners' time and account. In case any survey at loading port causing by vessel's age and condition, Notice of Readiness will only be allowed to tender after such survey granted.

3. Shipping Period / Nomination

4. **Cargo Quantity**

cargo size to be 160,000 metric tons 10 percent more or less in Owners' option of Iron Ore in bulk including iron ore concentrates in bulk, fine, pellets and lump but always excluding direct reduced iron ore, direct reduced iron ore pellets, hot briquetted iron ore, hot briquetted iron ore pellets and any other of DRI/HBI products, direct reduction iron ore. Maximum two grades are allowed and cargo shall be loaded, stowed, trimmed, carried and discharged in accordance with IMO's and local requirements and recommendations.

5. **Deviation**

Carrying vessel shall sail and arrive at the port of discharging within the normal and reasonable period of time. Any unreasonable deviation or delay is not allowed. It is understood that the vessels are allowed to proceed at economical speed and bunker on usual route.

Owners shall have the responsibility to advise Charterers of accidents occurred as soon as which is known to Owners while vessel being en route. If Owners fail to give such advice in time, any losses and charges incurred therefrom shall be for Owners' account. For the purpose of saving life or property the vessel has liberty to sail with or without pilots to tow and assist vessel in distress and to deviate.

6. **Notices**

6.a. On sailing from the proceeding port, Master and Owners shall inform the Shippers and Shippers' Port Administration at Port of Loading and Charterers, by telex or fax, the expected time of arrival (ETA) of the vessel. Such information shall be updated twelve (12) days, eight (8) days three (3) days, two (2) days and one (1) day before the vessel's expected arrival at loading port, or at any time upon Charterers' request.

6.b. Master or Owners shall with the 72 hours notice inform Shippers about vessel's cargo plan with following details:

- Arrival and departure drafts
- Air draft
- Ballast quantity on arrival and, if in cargo holds, how distributed
- Time required for deballasting after berthing (deballasting time will be accorded to condition when vessel passed nomination by charterer.)
- Loading sequence

Master or Owners shall also state in 72 hours notices, whether a "Gas Free Certificate" is required or not.
Unless otherwise instructed by Shippers, Master or Owners shall undertake that vessel be presented for berthing with minimum ballast compatible with vessel's seaworthiness.

6.c. Owners should, on departure of the vessel from the loading port, by cable (including e-mail or fax) inform Charterers of the shipping advice (indicating departure date,

ETA China, loaded quantity of each type of ore, estimated arrival draft and hatchwise plan).

6.d. Master of the vessel or Owners shall give Charterers' agent and Charterers at the discharging port(s) the following 6 notices of ETA of the vessel at the discharging port. The first notice to be given on departure of the vessel from loading port, then 20 days, 15 days, 10 days, 72 hours and 24 hours prior to ETA.

The first notice shall indicate the name of the vessel, the type and quantity of cargo and the number of compartments.

7. **Loading Port And Discharging Port**

7.A. Charterers shall load the cargo and trimmed at one or two safe berth(s), one safe port Tubarao or Ponta da Madeira or Guaiba International Terminal or Sepetiba (which to be renamed as Itaguai) or Ubu, Brazil, all in Charterers' option, always safely afloat, free of risks, expenses to Owners.

7.B. Upon completion of loading, the vessel shall proceed to discharging port all in Charterers' option as follows:

a) one or two safe berth(s) each one safe port Beilun or Majishan or Qingdao or Rizhao or Yantai or Caofeidian or Bayuquan or Dalian or Xingang or Lianyungang.
b) one or two safe berth(s) each one safe port Beilun or Majishan or Qingdao or Rizhao, plus one or two safe berth(s) each one safe port Baoshan or Luojing or Nantong or Zhangjiagang (Haili terminal).
c) one safe anchorage plus one or two safe berth(s) each Shanghai (Luhuashan plus Luojing, which to be deemed as one discharging port) or Zhanjiang or Fangcheng.
d) one safe anchorage plus one or two safe berth(s) Luhuashan, plus Nantong or Zhangjigang (Haili terminal).
e) one or two safe berth(s) each one or two safe port(s) Rizhao plus Lanshan.
f) one safe anchorage plus one or two safe berth(s) Zhanjiang or Fangcheng, plus one or two safe berth(s) each Baoshan or Luojing or Nantong or Zhangjiagang (Haili terminal).

8. **Demurrage and Despatch Clause**

Demurrage and despatch shall be calculated on the basis of the statement of facts made by Agents at loading port entrusted by Owners and mutually confirmed by Master and Loading and Discharging Port Authority.

8A. Loading Port

Laytime at loading port is non-reversible.

Loading rate (scale load):

a) At Tubarao / Ponta Da Madeira: 40 hours for first 120,000 metric tons and one hour or pro-rata for each 5,000 metric tons exceeding 120,000 metric tons.

b) At Guaíba International Terminal: 55,000 metric tons per weather working day, Sundays and holidays included.
c) At Sepetiba: 50,000 metric tons per weather working day, Sundays and holidays included.
d) At Ubu: 60,000 metric tons per weather working day, Sundays and holidays included.

12 hours turn time, unless sooner commenced, any time used to count at load port.

Demurrage rate : US$ ________ per day or pro rata for part of a day for laytime over-used.
Despatch rate : US$ ________ per day or pro rata for part of a day for laytime saved.

8.A.a. The following time will not count as laytime at loading ports:-
- time used for sailing from anchorage to wharf till all fastened at the designated loading berth
- time used for joint inspection
- time used for draft survey during loading
- stoppage caused by adjusting ballast (or deballasting)
- stoppage caused by bad weather (bad whether will be defined according to the declaration of terminal/port authority)
- stoppage or partial stoppage caused by Owners and partial stoppage as pro rata
- stoppage caused by Force Majeure

8.B. Discharging Ports

Discharging rate: 25,000 metric tons per weather working day of 24 consecutive hours Sunday and holiday included with 24 hours turn time each discharging port, unless sooner commence and half time to count.

Demurrage rate : US$ ________ per day or pro rata for part of a day for laytime over-used.
Despatch rate : US$ ________ per day or pro rata for part of a day for laytime saved.

8.B.a. At the discharging ports, Notice of readiness shall be tendered any time day or night Sundays and holidays included, provided the vessel is ready for discharging. Laytime shall commence 24 hours after tendering the Notice of Readiness, unless sooner commenced.

8.B.b. The following time will not count as laytime at discharging ports:-
- time used for sailing from anchorage to wharf till all fastened at the designated discharging berth
- time used for shifting between berth to berth
- time used for draft survey during discharging
- stoppage caused by adjusting ballast (or deballasting)
- stoppage caused by bad weather (bad whether will be defined according to the

declaration of terminal/port authority)

- stoppage or partial stoppage caused by Owners and partial stoppage as pro rata
- stoppage caused by Force Majeure

8.B.c. Laytime is non-reversible between loading port and discharging port.

8.B.d. Deleted

8.B.e. Each vessel has the right, according to the rules and regulations of the port, to sail from discharging port at the first available tide (confirmed by pilot station of the port) after completion of discharging, no matter laytime has been fully used or not.

8.B.f. The Master will try to pursuade the Port Authority at discharging port to clean the remains of cargoes dropped on deck during discharging. Expense shall not be for owners' account.

9. Freight Rates

Freight basis Tubarao / Qingdao:
U.S.$ per metric ton FIOST basis 1/1

Freight for other loading port:
Ubu: plus U.S.$ 0.20 per metric ton over Tubarao rate.
PDM: plus U.S.$ 0.20 per metric ton over Tubarao rate.
GIT: plus U.S.$ 1.15 per metric ton over Tubarao rate.
Sepetiba: plus U.S.$ 1.15 per metric ton over Tubarao rate (basis 18.1 meter draft).
Sepetiba: plus U.S.$ 2.35 per metric ton over Tubarao rate (basis 17.1 meter draft)

The above freight rate shall be on F.I.O.S.T. basis per metric ton on Bills of Lading quantity (and deadfreight if applicable).

Freight for other loading and discharging ports to be calculated on the open book basis based on the time charter return by the final performing vessel on Tubarao / Qingdao route at agreed base freight rate to the final discharging port only and no re-positioning advantage/dis-advantage for Owners.

Terms for other loading and discharging ports to be advised later. Any alternative loading port shall be always within Brazil and any alternative discharging port shall be always within P.R.China.

10. Payment of Freight

10.A. Freight is to be paid in U.S. Dollars to the bank account designated by Owners.

10.B. Initial 95% freight payable within 7 banking days after signing / releasing bills of Lading marked "Freight Payable as per Charter Party" and against Owners' original freight invoice. Balance 5% freight to be settled together with demurrage(s) / despatch(es), if any, within 30 calendar days after completion of discharging and agreeing laytime calculation with supporting documents.

11. **At Discharging Ports**

11.A. The cargo on vessel shall be in grabs' reach. Vessel shall be guaranteed suitable for grab discharge. If the cargo is not accessible by means of grabs (including in hatches), the extra expenses over and above the cost of normal grab discharge at discharging ports shall be for Owners' account.

11.B. Overtime of the crews and officers on board shall be for Owners' account. The vessel shall, if required, supply light for night work as on board free of expenses to Charterers.

12. **Taxes and Dues**

Any taxes/dues/wharfages on cargo at loading and discharging ports shall be for Charterers' account. Any taxes/dues/wharfages on vessel/freight/Bill of Lading at loading port shall be for Owners' account.

13. **Stevedoring Damage at Loading and Discharging Ports**

Stevedoring damage, if any at loading port shall be settled between Port Authorities and Owners, but Charterers will lend all possible assistance to Owners.

Stevedore damage, if any at discharging port, shall be settled between Owners and port Authorities, but Charterers will lend all possible assistance to Owners in collecting any stevedore damage claims.

14. **Bill of Lading**

The Bill of Lading shall be prepared in accordance with procedures established in the Purchase Contract. The Bill of Lading shall be signed by Master or Agents of Owners with 24 hours after completion of loading and awarded to Shippers, freight and all conditions as per this Charter Party. If any of clauses in Bill of Lading is inconsistent with that in this Charter Party, the latter to be taken as governing documents.

15. **Assignment**

Neither Owners nor Charterers may assign the contract in whole or in part without prior written consent of the other party. Owners and Charterers shall always remain responsible for the due fulfillment of this Charter Party.

16. **Agent(s)**

Charterers' agent at both loading and discharging port. Agents to be local licensed shipping agency to be nominated which is subject to Owners approval.

Charterers to settle disbursements on Owners' behalf at lumpsum U.S.$ 90,000 for port disbursements at one discharging port and U.S$120,000 for port disbursements at two discharging ports including agency fees and Chinese tonnage dues, if any. Same amount to be deducted from initial freight payment without supporting vouchers.

Once the agents have been confirmed, Charterers/Owners shall inform Charterers/ Owners of their agents at loading and discharging ports in time. Charterers/Owners shall send to Charterers/Owners by express-mail or fax the statement of facts of loading and discharging ports within three (3) business days after the completion of discharging.

M/V "TMT TBN" – C/P DATED 12TH JANUARY 2007 IN TAIPEI

17. General Average

In case of General Average, the same shall be adjusted according to "York-Antwerp Rules 1974 amended 1990". Should the vessel be put into any port or ports due to leakage or damage incurred en route or in any port, the Master and Owners shall inform Charterers without any delay.

18. War Cancellation Clause

In the event of war or warlike operation involving either Japan, the United States of America, Great Britain, Russia, P.R. China, Brazil, Norway or the nation under the flag of which any vessel performing under this Charter Party is registered, and this, seriously affects Charterers' or Owners' ability to perform or cost of performing their obligations under this Contract, Charterers or Owners may advise the other party, that they wish to cancel this particular voyage.

The parties shall then meet within thirty (30) days, to decide whether this Contract or any part of it shall be amended, suspended or otherwise dealt with. If no agreement is reached, the Contract shall be suspended for ninety (90) days and failing agreement by end of this ninety (90) days extension, the voyage in question shall be cancelled. If major war breaks out between any two or more of the above-mentioned countries directly affecting the performing of this Contract, both Owners and Charterers shall have the right to cancel this Contract.

19. Both to Blame Collision Clause

Clause 23 of ASBATIME 1981 shall apply to this Charter Party.

20. New Jason Clause

Clause 23 of ASBATIME 1981 shall apply to this Charter Party.

21. Clause Paramount

All Bills of lading under the Charter Party shall include the following Clause Paramount: Hague-Visby Rules 1968 or similar legislation of the nation of destination shall be applicable.

22. War Risk

Clause 16 of Gencon (Revision 1976) shall apply to this Charter Party.

23. Strike and Force Majeure Clause

23.a. At loading port:

The time lost as a result of all or any of the following causes under shall not be count as laytime and demurrage VIZ: wars, rebellions, tumults, civil commotions, strikes, insurrections, political disturbances, epidemics and quarantine, riots, lock-out, stoppage miners, workmen, railway employees, stevedores, seamen or any other workers essential to the working, carriage, delivery, shipment, interruptions of railway transport, whether partial or general, landslips, floods, intervention of sanitary, customs and/or other constituted authorities or other causes beyond Charterers' control preventing cargo preparation, loading or berthing vessel. Once a nominated vessel has been confirmed by

Charterers, any loss of vessel's schedule incurred by strikes of the miners or company employees is to be considered as Force Majeure.

23b. At discharging ports:
Time lost as a result of all or any of the following cause shall not be count as laytime and demurrage, VIZ: wars, rebellions, tumults, civil commotions, strikes, insurrections, political disturbances, epidemics, quarantine, riots, lock-out, stoppage of workmen, railway employees, stevedores, seamen or any other workers essential to the working, carriage, delivery, shipment, interruptions of railway transport, whether partial or general, landslips, flood, intervention of sanitary, customs and/or other constituted authorities or other causes beyond Charterers' control preventing cargo preparation, discharging or berthing vessel.

If there is a strike or lockout or boycott or Force Majeure condition, affecting the vessel's arrival time, the discharging after the vessel's arrival at or off the port of discharge, vessel's berthing, departure and same has not been settled within 48 hours, Charterers shall have the option of keeping the vessel waiting until such strike or lockout or boycott or Force Majeure condition is at an end against paying demurrage plus bunkers consumed after expiration of the time allowed for discharge, or ordering the vessel to a safe port where she can safety discharge without risk of being detained by strike or lockout or boycott or Force Majeure.

Such orders shall be given within 48 hours after the master or Owner have given notice to Charterers of strike or lockout, boycott of Force Majeure condition affecting the discharge. On delivery of the cargo at such port, all conditions of this Contact shall apply and the vessel shall receive the same freight as if she had discharged the cargo at the original port. If the distance of the substituted port exceeds 100 nautical miles, the freight rate on the cargo delivered at the substituted port to be increased in proportion. In any event any expenses and risk causes by strike or lockout or boycott of master, officers or crew on board the performing vessel always to be for Owners' account

24. Arbitration
Any disputes arising under the Contact shall be settled amicably. In case no such settlement can be reached, the matter in dispute shall be referred to three persons at London and according to English law. One chosen by each of the parties hereto and the third by the two so chosen; their decision or that of the two of them shall be final, and for the purpose of enforcing any awards, this agreement may be made a rule of the court, the arbitrators shall be commercial men.

25. War Risk Insurance
War Risk Insurance, if any, shall be for Owners' account.

26. Extra Insurance
No overage premium to apply.

27. Lien
Owners shall have a lien on cargo for ocean freight, deadfreight, demurrage and General

Average contribution due under the Charter Party.

28. Gas Free Clause

Vessel nominated by Owner shall be in gas free condition and shall have a valid Gas Free Certificate on board if required by Shippers prior to presentation at loading port. Owner undertake to submit the vessel to a further gas free inspection by a local independent surveyor at loading port for their own account. Notice of readiness may be tendered prior to such inspection but if the vessel is found not to be gas free, then laytime not to commence until vessel has obtain Gas Free Certificate. If the vessel has already been berthed at the terminal and then is found not to be gas free by the local surveyor, then the vessel is to vacate the berth immediately and proceed to a safe anchorage for cleaning, all extra expenses for shifting to be for owners' account. Laytime at the loading port not to commence to count until the vessel has passed gas free by the local independent surveyor, even if after the expiry of the turn time. In order to expedite such inspection, Master of combination vessel are recommended to inform the loading port agents 48 hours prior to arrival that a surveyor is required on vessel arrival at or off the terminal.

29. Language / Communication

It is agreed that the English language will be used in notices letter, cables and all other means of communications. All relevant communications between Charterers and Owners shall be made through telex, telegram or Fax.

30. LOI

If the original bills of lading cannot be presented at discharging port, owners/master agree to discharge/release the entire cargo without presentation of the original bills of lading only against Charterers letter of indemnity on their letter-head, with their authorized signature in owners standard P and I form and without bank guarantee or bank endorsement.

Discharge ports shown on the Bills of lading do not constitute a declaration of discharge port and charterers have the right to order the vessel to other ports within the terms of this charter party against charterers LOI in owners' PNI format without bank guarantee/endorsement.

31. ISM Clause

During the currency of this Contract, Owners shall procure that the vessel and "The Company" (as defined by ISM code) shall comply with the requirement of the ISM Code upon request. The Owners shall provide copy of relevant Documents of Compliance (DOC) and Safety Management Certificate (SMC) to Charterers with vessel nomination. Any loss, damage expenses and delay caused by failure or part of Owners or "The Company" to comply with the ISM Code shall be for Owners' account.

32. Commission

M/V "TMT TBN" – C/P DATED 12TH JANUARY 2007 IN TAIPEI

33. Headings

The headings in the Charter Party are for purpose of convenience only and shall not limit or otherwise affect any of the terms or stipulation hereof.

The Charter Party is written in English and signed as performing contract.

IN WITNESS WHEREOF, this Charter Party has been executed by and between Owners and Charterers in two (2) originals, one of each to be retained by Owners and Charterers.

OWNERS:
TMTBULK Co., Ltd., Taipei.

CHARTERERS:

CPBS [illegible] SADIPA

Ref: [illegible]

## STATEMENT OF FACTS

VESSEL CHINA PEACE
PORT OF REGISTER HONG KONG
FLAG HONG KONG, CHINA
AGENT [illegible] SHIPPING
BUILT 2008
CPBS - CVRD TERMINAL
PORT OF [illegible], BRAZIL

| Event | Date/Time | Event | Date/Time |
|---|---|---|---|
| ARRIVED AT OUTER ROADS | Nov 2[illegible] 2007 22:[illegible] LT | ANCHOR UP AT [illegible] ANCHORAGE | Dec 17th 2007 11:[illegible] LT |
| NOTICE OF READINESS TENDERED | Nov [illegible] 2007 22:[illegible] LT | BERTHED ALONGSIDE AT [illegible] QUAY | Dec 17th 2007 12:[illegible] LT |
| DROPPED ANCHOR OUTER ROADS | Nov [illegible] 2007 22:[illegible] LT | LOADING OPERATION STARTED | Dec 17th 2007 1[illegible] LT |
| PILOT ON BOARD TO INNER ANCHORAGE | Dec [illegible] 2007 [illegible] LT | LOADING OPERATION COMPLETED | Dec 18th 2007 20:30 LT |
| ANCHOR UP AT OUTER ROADS | Dec [illegible] 2007 10:[illegible] LT | TOTAL CARGO LOADED IN METRIC TONS | 1[illegible] |
| DROPPED ANCHOR AT INNER ANCHORAGE | Dec [illegible] 2007 1[illegible] LT | VESSEL SAILED | Dec 18th 2007 |
| FREE PRATIQUE GRANTED | Dec [illegible] 2007 [illegible] LT | ETA DISCHARGE PORT | Jan [illegible] 2008 |
| CLEARANCE FROM PORT AUTHORITIES | Dec [illegible] 2007 1[illegible] LT | ARRIVAL DRAFTS FORE/AFT | [illegible] |
| NOTICE OF READINESS ACCEPTED | Nov [illegible] 2007 22:[illegible] LT | SAILING DRAFTS FORE/AFT | 17.10 [illegible] |
| PILOT ON BOARD TO LOADING PIER | Dec 17th 2007 10:[illegible] LT | | |
| DISCHARGE PORT | | | [illegible] PORT, CHINA |

NOTES

| DATE | LOADING TIME START | LOADING TIME END | STOPPED TIME START | STOPPED TIME END | |
|---|---|---|---|---|---|
| | | | 15:45 | 16:55 | INITIAL DRAFT SURVEY |
| Dec 17th 2007 | - | - | 16:55 | 18:05 | SHORE PREPARATION |
| | - | - | - | - | LOADING IN PROGRESS |
| | 18:05 | 24:00 | | | |
| Dec 18th 2007 | 00:00 | 17:50 | 17:50 | 17:15 | CHECK DRAFT - TRIMMING CALCULATION |
| | 18:15 | 20:[illegible] | 20:20 | 20:30 | FINAL DRAFT SURVEY |

AGENT'S REMARKS CARGO DOCUMENTS SIGNED ON BOARD Dec 18th 2007 AT [illegible] HOURS LT

## CARGO RECEIPT

This is to confirm that following cargo was loaded on board of the M/V CHINA PEACE in accordance with the draft survey and the [illegible] Cargo Plan [illegible]

| Hold Number | Quantity | Cargo Description |
|---|---|---|
| 1 | 14 344,000 | SFBC |
| 2 | 18 772,000 | SFSC |
| 3 | 19 782,000 | SFSC |
| 4 | 10 501,000 | SFSC |
| 5 | 17 950,000 | SFSC |
| 6 | 18 [illegible]2,000 | SFSC |
| 7 | 18 [illegible]72,000 | SFSC |
| 8 | 18 421,000 | SFSC |
| 9 | 15 490,000 | |

Consignee/Notify
Cargo SFSC
Consignee TO ORDER
Notify [illegible] IRON [illegible] CO., LTD. TEL [illegible] FAX [illegible]

TOTAL 156,004,000 METRIC TONS
Equivalent to 153,[illegible],554 LONG TONS of 1.016047 Mtrs Each

Sidney [illegible]
[illegible] - FOREMAN
CPBS-CVRD TERMINAL

Master of M/V CHINA PEACE

[Stamp: CHINA PEACE SHIPPING LIMITED, HONG KONG]

AGENT
[illegible] Shipping [illegible] Ltda.
As Agent Only

日照华海国际船舶代理有限公司
SINO-OCEAN SHIPPING AGENCY RIZHAO

装卸时间事实记录

LAYTIME STATEMENT OF FACTS

Vessel's name: M/V. CHINA PEACE | Voy No:003 | Port: RIZHAO | Date:3RD FEB.,2008

Cargo: Discharging158,004metric tons of iron ore

| 日期 Date | 星期 Day | 时间 HRS From: | To: | 说明 Descriptions |
|---|---|---|---|---|
| 26TH JAN | SAT | ----- | 0618 | Vessel arrived at the anchorage of RIZHAO port and N.O.R was tendered |
| | | 0618 | 2400 | Waiting for berth |
| 27TH JAN | SUN | 0000 | 2400 | Waiting for berth |
| 28TH JAN | MON | 0000 | 2400 | Waiting for berth due to bad weather |
| 29TH JAN | TUE | 0000 | 2400 | Waiting for berth |
| 30TH JAN | WED | 0000 | 2400 | Waiting for berth due to bad weather |
| 31ST JAN | THU | 0000 | 2400 | Waiting for berth |
| 1ST FEB | FRI | 0000 | 1100 | Waiting for berth |
| | | 1100 | 1312 | Vessel heaved up anchor and proceeded to pilot station |
| | | 1312 | 1448 | P.O.B and proceeding to her berth |
| | | ----- | 1448 | First line made fast ashore |
| | | 1448 | 1524 | Vessel berthed alongside east no.10 and all lines made fast ashore |
| | | 1524 | 1630 | Quarantine inspection being carried out and free pratique was granted |
| | | 1630 | 1730 | Initial draft survey being carried out and completed |
| | | 1730 | 2400 | Discharging commenced and continued |
| 2ND FEB | SAT | 0000 | 2400 | Discharging continued |
| 3RD FEB | SUN | 0000 | 1115 | Discharging continued |
| | | ----- | 1115 | Discharging completed |
| | | 1115 | 1215 | Final draft survey being conducted and completed |
| | | 1215 | ----- | Waiting for pilot |
| | | ----- | 1408 | P.O.B and vessel sailed from Rizhao port |

1. Ship's GRT: 88930  2. Number of ship's hatches: 9  3.Hatches worked in this port: 1.2.3.4.5.6.7.8.9.

Remarks: No any delay due to vessel

M/V.CHINA PEACE
CAPTAIN
[Stamp: CHINA PEACE SHIPPING LIMITED HONG KONG M/V CHINA PEACE]

AS AGENT ONLY
SINO-OCEAN SHIPPING AGENCY RIZHAO





On board of m.v. " CHINA PEACE"
At this port, November 28TH 2007
Itaguai Port – R.J. – Brazil

To Messrs
Companhia Vale do Rio Doce
C/O
CPBS Terminal
Estrada da Ilha da Madeira s/n
Itaguai – Rio de Janeiro - Brasil

## NOTICE OF READINESS

Kindly be advised that the M.V. "CHINA PEACE" arrived at Sepetiba roads, on November 28TH 2007 at 22:15 hours lt, and she is ready in all respects to load her cargo of about 158,650metric tons of iron ore in bulk.

As to the acceptance of this Notice of Readiness tendered to you on November 28TH, 2007 at 22:15 hours lt, reference shall be made to the relevant Charter Party, which covers the present voyage.

Yours Faithfully,

PEACE SHIPPING LIMITED

Master of MV "CHINA PEACE"

*NOR accepted on November 28th 2007 at 22:15 hours LT.*

CPBS

Alice Rafaela Dias
Inspetor de Embarque FOREMAN



# NOTICE OF FORCE MAJEURE

Companhia Portuária Baía de Sepetiba – CPBS, operators of the iron ore terminal of Itaguaí port, advises to the ship's agents who represents vessels that usually load at the terminal, and to shippers clients of the terminal and inland carriers, to be relayed to who may be concerned:

During berthing operation of a vessel at the terminal, on 08/DEC/07, at about 09:00, an incident occurred resulting in severe damage to one of the mooring dolphins. As a result we had to stop the berthing/loading operations of the terminal, for safety reasons, and for this reason we are declaring force majeure.

Steps are being taken to re-establish the operations as soon as possible. We anticipate a stoppage of 10 days. We will advise if and when this estimate changes.

Itaguaí, Sunday 09 December 2007

Original signed by
Efrem Daumas
General Manager

Estrada Ilha da Madeira, s/n – Itaguaí – RJ – CEP: 23825-410
Tel: (21) 3781-6310 Fax (21) 3781-6014
e-mail: efrem.daumas@vale.com

PORT: RIZHAO / ~~LANSHAN~~
DATE: 26TH JAN. 2008

TO: SINO-OCEAN SHIPPING AGENCY RIZHAO

# NOTICE OF READINESS

**RE: M/V** CHINA PEACE

DEAR SIRS,

THIS IS TO ADVISE THAT THE ABOVE VESSEL ARRIVED AT ANCHORAGE AT 0618 HRS ON 26TH JAN. 2008, AND NOW SHE IS IN ALL RESPECTS READY TO LOAD/DISCHARGE HER CARGO IN ACCORDANCE WITH C/P DATED ____________

NOTICE OF READINESS WAS TENDERED AT ____________
26TH JAN. 2008
MASTER OF M/V CHINA PEACE

NOTICE OF READINESS WAS ~~ACCEPTED~~/RECEIVED AT ____________
AS AGENTS ONLY

**M.V. CHINA PEACE**

**SCHEDULE: LAYTIME AND DEMURRAGE CALCULATION**

Cargo Quantity: 158,004 mt[1]

Demurrage Rate: US$230,000 per day pro rata[2]

**LOAD PORT: Itaguai**

Loading rate: 50,000.00 mt per weather working day SHINC[3]

Total time allowed: 3 days 3 hours 51 minutes (3.1601 days or 75.84 hours)[4]

Total time used 19 days 10 hours 15 mins as follows:

From 10.15 29/11[5] to 20.30 18/12[6] = 19 days 10 hours 15 mins; less

Note that no force majeure[7] since Charterers could have loaded from an alternative berth which were available (see paragraph [9] of the claim submissions).

Note that Vessel shifting[8]: 11.12 17/12 to 15.45 17/12 = 4 hours 33 mins; is to count because Vessel is on demurrage prior to this time[9].

Time on Demurrage[10] = 16 days 6 hours 24 minutes = 16.2670 days

Loadport Demurrage at US$230,000 pdpr[11] = **US$3,741,410.77**

Less 3.75% address commission[12] = **US$3,601,107.86**

---

1 As per loadport SOF

2 Clause 8.A.; fixture recap dated 9 November 2007

3 Clause 8.A(c).

4 158,004 mt / 50,000 mt per wwd = 3.16008 days or 75.842 hours

5 Vessel tenders NOR at 22.15 hours and accepted. NOR becomes effective for the purposes of running of laytime after 12 hour turn time: clause 8.A ; fixture recap dated 9 November 2007

6 Completion of final draft survey as per SOF

7 Loss of time from stoppage caused by force majeure: clause 23

8 Time used for sailing from anchorage to wharf till all fastened at the designated loading berth does not count if Vessel on laytime, but counts if Vessel is on demurrage: clause 8.A.a.

9 Vessel on demurrage from 14.06 hours on 2 December

10 Total time used of 19 days 10 hours 15 mins less time allowed of 3 days 3 hours 51 minutes

11 Clause 8.A.; fixture recap dated 9 November 2007

12 Fixture recap dated 9 November 2007

**DISPORT: Rizhao**

Discharging rate: 27,500.00 mt per weather working day SHINC[13]

Total time allowed: 5 days 17 hours 54 minutes (5.7456 days or 137.89 hours)[14]

Total time used 6 days 23 hours 33 minutes as follows:

(a) 06.18 27/01[15] to 11.15 3/2[16] = 7 days 4 hours 57 minutes; less

(b) Vessel shifting[17]: 11.00 1/2 to 15.24 1/2 = 4 hours 24 minutes;

(c) Draft survey[18]: 16.30 1/2 to 17.30 1/2 = 1 hour

Time on Demurrage[19] = 1 day 5 hours 39 minutes = 1.2367 days

Loadport Demurrage at US$230,000 pdpr[20] = **US$284,199.50**

Less 3.75% address commission[21] = **US$273,542.02**

---

[13] Clause 8.B.

[14] 158,000 mt / 27,500 mt per wwd = 5.7456 days or 137.89 hours

[15] NOR tendered 06.18 hours 26 January. Laytime commences 24 hours after tendering NOR; clause 8.B.a.

[16] Completion of discharge

[17] Time used for sailing from anchorage to wharf till all fastened at the designated loading berth does not count: clause 8.B.b.

[18] Time used for draft survey during discharging not to count as laytime: clause 8.B.b.

[19] Total time used of 6 days 23 hours 33 minutes less time allowed of 5 days 17 hours 54 minutes

[20] Clause 8.A.; fixture recap dated 9 November 2007

[21] Fixture recap dated 9 November 2007

----- Original Message -----
From: MIT TAIPEI/OPS TEAM
To: ops@pacificbulk.com
Sent: Monday, April 07, 2008 4:26 PM
Subject: MV "CHINA PEACE" / TMT / CPDD 071109 / 5% BAL FRT + DEM

FM: MIT TAIPEI - OPS TEAM - Ref: 080407-SAMMY-4946.
TO: PBS

ATTN: MS. SUN MIN/GENERAL MANAGER
MR. MICHAEL TONG

RE: MV CHINA PEACE/TMT -CPDD 09/NOV/2007
=x=
RCVD FLWG FM CHTRS:-

///QTE

Understand that Lawyers are handling this case.

But as per charterer's request, they would like to get the confirmation from owner for non-disputed part.

30/04/2008

## Laytime Calculation

### Loading Sepetiba Bay

| | | | |
|---|---|---|---|
| Vessel | China Peace | Owner | PACIFIC BULK SHIPPING LTD. BAHAMAS |
| Ref | Voyage 20070912 (2007/0574) | Charterer | TMTBULK CO., LTD. |
| CPDate | 09Nov2007 | Cargo | Iron ore |

Port Load - Sepetiba Bay Iron ore 158,004.000 MT at 50,000.00 MT/d (SHINC)
B/L Date 18Dec2007
Demurrage Terms 230,000 USD per Day (Always on Demurrage)

| | | | |
|---|---|---|---|
| Notice tendered | 28Nov2007 22:15 | Loading commenced | 17Dec2007 16:05 |
| Loading completed | 18Dec2007 20:20 | Sailed | 19Dec2007 00:00 |
| Time To Count From | 29Nov2007 10:15 | Time To Count To | 18Dec2007 20:30 |

| Day | Date | From | To | Description | Time | Pcnt | Laytime | Demurrage |
|---|---|---|---|---|---|---|---|---|
| Thu | 29Nov2007 | 10:15 | 24:00 | Time Counting | 13:45 | 100 | 13:45 | |
| Fri | 30Nov2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Sat | 01Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Sun | 02Dec2007 | 00:00 | 14:06 | Time Counting | 14:06 | 100 | 14:06 | |
| | | | | — ON DEMURRAGE 02Dec2007 14:06 — | | | | |
| Sun | 02Dec2007 | 14:06 | 24:00 | Time Counting | 09:54 | 100 | | 09:54 |
| Mon | 03Dec2007 | 00:00 | 10:06 | Time Counting | 10:06 | 100 | | 10:06 |
| Mon | 03Dec2007 | 10:06 | 13:30 | Shifting | 03:24 | 0 | 00:00 | |
| Mon | 03Dec2007 | 13:30 | 24:00 | Time Counting | 10:30 | 100 | | 10:30 |
| Tue | 04Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Wed | 05Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Thu | 06Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Fri | 07Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Sat | 08Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Sun | 09Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Mon | 10Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Tue | 11Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Wed | 12Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Thu | 13Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Fri | 14Dec2007 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Sat | 15Dec2007 | 00:00 | 20:35 | WB (Disputed) | 20:35 | 0 | 00:00 | |
| Sat | 15Dec2007 | 20:35 | 24:00 | Time Counting | 03:25 | 100 | | 03:25 |
| Sun | 16Dec2007 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | | 24:00 |
| Mon | 17Dec2007 | 00:00 | 11:12 | Time Counting | 11:12 | 100 | | 11:12 |
| Mon | 17Dec2007 | 11:12 | 15:45 | Shifting | 04:33 | 0 | 00:00 | |
| Mon | 17Dec2007 | 15:45 | 24:00 | Time Counting | 08:15 | 100 | | 08:15 |
| Tue | 18Dec2007 | 00:00 | 18:50 | Time Counting | 18:50 | 100 | | 18:50 |
| Tue | 18Dec2007 | 18:50 | 19:15 | Trimming | 00:25 | 0 | 00:00 | |
| Tue | 18Dec2007 | 19:15 | 20:30 | Time Counting | 01:15 | 100 | | 01:15 |

| | | | |
|---|---|---|---|
| DEMURRAGE | 9 Days 1 Hours 27 Mins (9.0604167) | Time Allowed | 03:03:51 |
| | at USD 230,000/d | Time Used | 12:05:18 |
| | = USD 2,083,895.83 | On Demurrage | 09:01:27 |

May. 27. 2008 2:39PM Lennon, Murphy & Lennon LLC No. 4872 P. 60

Laytime Calculation 第2頁，共2頁

Generated by SoftMAR

file://C:\Documents and Settings\tshih\Local Settings\Application Data\SoftMAR\Laytime\lay... 2008/4/7
23

May. 27. 2008 2:39PM Lennon, Murphy & Lennon LLC No. 4372 P. 61

Laytime Calculation 第1頁，共1頁

# Laytime Calculation

## Discharging Rizhao

| | | | |
|---|---|---|---|
| Vessel | China Peace | Owner | PACIFIC BULK SHIPPING LTD. BAHAMAS |
| Ref | Voyage 20070012 (2007/0574) | Charterer | TMTBULK CO., LTD. |
| CPDate | 09Nov2007 | Cargo | Iron ore |

Port Discharge - Rizhao Iron ore 158,004.000 MT at 27,500.00 MT/d (SHINC)

Demurrage Terms 230,000 USD per Day (Always on Demurrage)

Despatch Terms 115,000 USD per Day (Working Time Saved)

| | | | |
|---|---|---|---|
| Notice tendered | 26Jan2008 06:18 | Discharging commenced | 01Feb2008 17:30 |
| Discharging completed | 03Feb2008 11:15 | Sailed | 03Feb2008 14:08 |
| Time To Count From | 27Jan2008 06:18 | Time To Count To | 03Feb2008 11:15 |

| Day | Date | From | To | Description | Time | Pcnt | Laytime | Despatch |
|---|---|---|---|---|---|---|---|---|
| Sun | 27Jan2008 | 06:18 | 24:00 | Time Counting | 17:42 | 100 | 17:42 | |
| Mon | 28Jan2008 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Tue | 29Jan2008 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Wed | 30Jan2008 | 00:00 | 24:00 | WB (Disputed) | 24:00 | 0 | 00:00 | |
| Thu | 31Jan2008 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Fri | 01Feb2008 | 00:00 | 11:00 | Time Counting | 11:00 | 100 | 11:00 | |
| Fri | 01Feb2008 | 11:00 | 15:24 | Shifting | 04:24 | 0 | 00:00 | |
| Fri | 01Feb2008 | 15:24 | 16:30 | Time Counting | 01:06 | 100 | 01:06 | |
| Fri | 01Feb2008 | 16:30 | 17:30 | Draft survey | 01:00 | 0 | 00:00 | |
| Fri | 01Feb2008 | 17:30 | 24:00 | Time Counting | 06:30 | 100 | 06:30 | |
| Sat | 02Feb2008 | 00:00 | 24:00 | Time Counting | 24:00 | 100 | 24:00 | |
| Sun | 03Feb2008 | 00:00 | 11:15 | Time Counting | 11:15 | 100 | 11:15 | |
| | | | | --- ON DESPATCH 03Feb2008 11:15 --- | | | | |
| Sun | 03Feb2008 | 11:15 | 24:00 | Time Saved | 12:45 | 100 | | 12:45 |
| Mon | 04Feb2008 | 00:00 | 05:36 | Time Saved | 05:36 | 100 | | 05:36 |

| | | | |
|---|---|---|---|
| DESPATCH | 0 Days 18 Hours 21 Mins (0.7645833) | Time Allowed | 05:17:54 |
| | at USD 115,000/d | Time Used | 04:23:33 |
| | = USD 87,927.08 | On Despatch | 00:18:21 |

Generated by SoftMAR

24

file://C:\Documents and Settings\shih\Local Settings\Application Data\SoftMAR\Laytime\lay... 2008/4/7

----- Original Message -----
From: pacific bulk_ sun
To: MIT TAIPEI/OPS TEAM
Cc: COMM@pacificbulk.com
Sent: Monday, April 07, 2008 5:19 PM
Subject: Re: MV "CHINA PEACE" / TMT / CPDD 071109 / 5% BAL FRT + DEM

Dear Sammy,

Thanks for your kind assistance. Below for Chtrs.

"Owners thank Chtrs for their kind message dated April 7th 2008. Owners own version of non-disputed part is a bit larger than Chtrs' version, however we would later today send Chtrs an updated invoice for non-disputed part as per Chtrs shortly and leave the balance for future. "

Best regards,
Min Sun
Commercial Department
Pacific Bulk
Tel : +(852)2581-1699
Fax : +(852)2581-1799

30/04/2008

----- Original Message -----
From: pacific bulk - acctg
To: MIT
Cc: Pacific Bulk - ops ; Pacific Bulk - chrtg
Sent: Tuesday, April 08, 2008 5:22 PM
Subject: MV CHINA PEACE/TMT -- DEM INV

TO: MIT TAIPEI
FM: PACIFIC BULK CHRTG
DD: 08/APR/08

ATT: PETER + SAMMY

RE: MV CHINA PEACE/PBS -- 5% BAL FRT + DEMURRAGE SETTLEMENT

PLS FIND/CHECK ATTACHED FRT INV NO.: PAC323/07-3 & PAC323/07-4.
KINDLY CONFIRM IN ORDER.

CHRTRS PLS ADV PAYMENT SCHEDULE DTLS FOR OWRS EASY TRACING FUNDING.
PROMPT PAYMENT OF THE INV WLD BE APPRECIATED.

TKS/BRGDS.
FRANK FOR MR. TONG
AS AGTS FOR PBS ONLY

---

This email has been scanned by the MessageLabs Email Security System.
For more information please visit http://www.messagelabs.com/email

30/04/2008

# PACIFIC BULK SHIPPING LTD.

c/o Rm 2212, 22/F West Tower Shun Tak Centre, 168-200 Connaught Road C. HK
Tel : (852) 2581-1699 Fax : (852) 2581-1799
E-Mail : shipping@pacificbulk.com Telex : 94075876 BULK G

To: TMT Bulk Co., Ltd

Inv. No.: PAC323/07-3
Inv. Date: 07-Apr-08
Due Date: 04-Mar-08

## FREIGHT INVOICE
## (REVISED)

| Description | | | Amount (USD) |
|---|---|---|---|
| Vessel: | M.V. "China Peace" | | |
| C/P dated: | 9-Nov-07 | | |
| B/L DD: | 18-Dec-07 | | |
| Voyage: | Itaguai Port, Brazil / Rizhao Port, China | | |
| Cargo: | 158,004.000 mts SFSC | | |
| Freight: | 158,004.000 MT x USD 101.60 PMT = | $16,053,206.40 | |
| Less: | 1st received - 08 Jan, 2008 | ($14,588,650.60) | |
| Less: | 3.75% Addcomm. | ($601,995.24) | |
| Less: | Port Disbursment for one disport | ($90,000.00) | |
| Add: | Demurrage at loadport - Itaguai | $3,722,722.50 | |
| Add: | Demurrage at disport - Rizhao | $284,199.50 | |
| Less: | 2nd received - 14 Mar, 2008 | ($772,545.56) | |
| DISPUTED AMOUNT to be issued in seperated invoice | | ($2,010,953.25) | |
| Total in Owners favour | | | $1,995,983.75 |

Say Total U.S. Dollars One Million Nine Hundred Ninety-Five Thousand Nine Hundred and Eighty-Three and Cents Seventy-Five Only.

Please remit above amount to our bank account as follows:

Bank: HSBC BANK, HONG KONG
Swift Code: HSBCHKHHHKH
In favour of: Pacific Bulk Shipping Co., Ltd.
USD A/C No.: 459-212650-838
Ref: M.V. "China Peace" / PAC323/07-3 - Dem/Des Settlement

Thanks your attention and please confirm your remittance by return

*For and on behalf of*
PACIFIC BULK SHIPPING LIMITED

*Authorized Signature(s)*

# PACIFIC BULK SHIPPING LTD.

c/o Rm 2212, 22/F West Tower Shun Tak Centre, 168-200 Connaught Road C. HK
Tel : (852) 2581-1699 Fax : (852) 2581-1799
E-Mail : shipping@pacificbulk.com Telex : 94075876 BULK G

To: TMT Bulk Co., Ltd

Inv. No.: PAC323/07-4
Inv. Date: 07-Apr-08
Due Date: 04-Mar-08

## FREIGHT INVOICE

| Description | | | Amount (USD) |
|---|---|---|---|
| Vessel: | M.V. "China Peace" | | |
| C/P dated: | 9-Nov-07 | | |
| B/L DD: | 18-Dec-07 | | |
| Voyage: | Itaguai Port, Brazil / Rizhao Port, China | | |
| Cargo: | 158,004.000 mts SFSC | | |
| DISPUTED AMOUNT | | $2,010,953.25 | |
| Total in Owners favour | | | $2,010,953.25 |

Say Total U.S. Dollars Two Million and Ten Thousand Nine Hundred and Fifty-Three and Cents Twenty-Five Only.

Please remit above amount to our bank account as follows:

Bank : HSBC BANK, HONG KONG
Swift Code: HSBCHKHHHKH
In favour of: Pacific Bulk Shipping Co., Ltd.
USD A/C No.: 459-212650-838
Ref: M.V. "China Peace" / PAC323/07-4 - Dem/Des Settlement

Thanks your attention and please confirm your remittance by return

*For and on behalf of*
PACIFIC BULK SHIPPING LIMITED

Authorized Signature

**IN THE MATTER OF**
**THE ARBITRATION ACT 1996**
**AND IN THE MATTER OF ARBITRATION**

**BETWEEN:**

**PACIFIC BULK SHIPPING LIMITED**
**Claimant / Shipowner**

**-and-**

**TMT BULK CO. LTD**
**Respondent / Charterer**

***"M/V CHINA PEACE"***

---

**CLAIM SUBMISSIONS**

---

**MFB**
**45 Moorfields**
**London EC2Y 9AE**

**Tel: 020 7330 8000**
**Fax: 020 7256 5778**
**Ref: CHA/0183/281190**