UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
PACIFIC BULK SHIPPING LTD.,            :
                                       :
                    Plaintiff,         :      08 Civ. 4890 (JSR)
                                       :
     - against -                       :      ECF CASE
                                       :
TMT BULK CO. LTD. a/k/a TMT BULK and   :
DUCKY EXPRESS SHIPPING S.A.,           :
                                       :
                    Defendants.        :
---------------------------------------------------------------X

### SECOND TURN OVER ORDER IN RESPECT OF ATTACHED PROPERTY

Whereas the Plaintiff, Pacific Bulk Shipping Ltd. ("Plaintiff"), and the Defendants, TMT Bulk Co. Ltd. a/k/a TMT Bulk and Ducky Express Shipping S.A. ("Defendants"), have entered into an agreement as to the security to be provided for Plaintiff's claim in the instant matter and which provides for the release of the property attached herein (see attached Escrow Agreement);

Whereas pursuant to Supplemental Admiralty Rule B of the Federal Rules of Civil Procedure, on or about May 28, 2008 Plaintiff obtained from the Court an Ex-Parte Order of Maritime Attachment together with Process of Maritime Attachment and Garnishment that authorized the attachment of Defendants' property with the Southern District of New York in an amount up to $5,592,213.41; and

Whereas J.P. Morgan Chase, acting pursuant to the Ex-Parte Order of Maritime Attachment and Garnishment, restrained and attached Defendants' property in the approximate amount of $789,587.87; and

and attached Defendants' property in the approximate amount of $53,788.61; and

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 8-8-08

Whereas the parties have entered into an agreement that provides that the funds attached shall be sent to an escrow account to act as security for the claims presented herein as set forth in the Escrow Agreement; and

Whereas the parties have agreed that Defendants' attached funds should be wired via electronic funds transfer by J.P. Morgan Chase to the following bank account:

Branch details:

The Royal Bank of Scotland plc
5-10 Great Tower Street
London EC3P 3HX

sort code 15-20-25
IBAN BIC (Formally the Swift code) RBO SGB2L

Account details:
United States Dollars client account
Account number: USD INCE-USDC
IBAN BIC: GB48 RBOS 1663 0000 1057 60
Reference: WJM/8643/TMT-CHINA PEACE

and that any bank fees associated with the transferring of settlement funds to the specified account shall not be deducted from the transferred funds; and

Whereas the parties have agreed that after the above wires have been received into the escrow account that Plaintiff's attorneys, Lennon, Murphy & Lennon, shall dismiss this action without prejudice pursuant to the terms of the Escrow Agreement;

IT IS HEREBY ORDERED that garnishee J.P. Morgan Chase, shall effect an electronic funds transfer in the approximate amount $789,587.87 which amount shall be deducted from the Defendants' property that garnishee J.P. Morgan Chase currently holds under attachment, and that garnishee J.P. Morgan Chase shall pay these amounts to the following account:

Branch details:

The Royal Bank of Scotland plc
5-10 Great Tower Street
London EC3P 3HX

sort code 15-20-25
IBAN BIC (Formally the Swift code) RBO SGB2L

Account details:
United States Dollars client account
Account number: USD INCE-USDC
IBAN BIC: GB48 RBOS 1663 0000 1057 60
Reference: WJM/8643/TMT-CHINA PEACE

; and

IT IS FURTHER ORDERED that the electronic funds transfers by garnishee J.P. Morgan Chase to fund the escrow account, in the approximate amount of $789,587.87, shall be immune from any attachment in the district after those funds are released by J.P. Morgan Chase en route to the designated escrow account;

IF IS FURTHER ORDERED that once the above funds have been received into the designated account that Plaintiff's New York counsel, Lennon, Murphy & Lennon, LLC, shall file a notice of dismissal, without prejudice pursuant to the terms of the Escrow Agreement in the instant action.

Dated: August 5, 2008
New York, NY

SO ORDERED:

_____
U.S.D.J.

THIS ESCROW AGREEMENT (this "Agreement") is dated the 21st day of July, 2008 and made

BETWEEN:

(1) TMT BULK CO. LTD, a company organised and existing under the laws of Panama with its registered office at Salduba Building, Top Floor, 53rd East Street, Urbanizacion Obarrio P.O. Box 7284, Panama 5, Panama ("TMT");

(2) TMT BULK of Salduba Building, Top Floor, 53rd East Street, Urbanizacion Obarrio P.O. Box 7284, Panama 5, Panama ("TMT Bulk");

(3) DUCKY EXPRESS SHIPPING S.A., a company organised and existing under the laws of Panama with its registered office at Salduba Building, Top Floor, 53rd East Street, Urbanizacion Obarrio P.O. Box 7284, Panama 5, Panama ("Ducky Express");

(4) PACIFIC BULK SHIPPING LTD., a company organised and existing under the laws of Hong Kong with its registered office at 2212, West Tower, Shun Tak centre, Central Hong Kong ("PBS");

(5) INCE & CO, International House, 1 St Katharine's Way, London E1W 1AY (the "Escrow Agent").

WHEREAS:

(A) Disputes have arisen between TMT and PBS in connection with a charterparty dated 9 November 2007 (the "Charterparty") relating to the m/v *China Pence*;

(B) PBS has demanded from TMT payment of US$3,874,649.88, which PBS alleges to be due to it from TMT in respect of Charterparty demurrage (the "Demurrage Claim");

(C) TMT has demanded from PBS payment of US$690,000, which TMT alleges to be due to it from PBS in respect of Charterparty despatch (the "Despatch Claim");

(D) On 28 May 2008, PBS filed proceedings in the United States District Court, Southern District of New York against TMT, TMT Bulk and Ducky Express, seeking security for its alleged claims (the "Rule B Attachment");

(E) As a result of the Rule B Attachment, PBS caught US$5,592,213.41 (the "Funds Attached") which was in the course of being transmitted via New York from or to TMT and/or TMT Bulk and/or Ducky Express at Citibank, Deutsche Bank, Standard Chartered Bank and HSBC (the "New York Banks");

(F) TMT Bulk and Ducky Express deny that they are *alter egos* of TMT; and

(G) TMT, TMT Bulk, Ducky Express and PBS wish to agree terms whereby the Funds Attached shall be transferred from the New York Banks, where they are currently held, into escrow, as security for the Demurrage Claim and whereby PBS shall transfer US$993,600 into escrow, as security for the Despatch Claim.

3,04.1380.00.2916.44

In consideration of the matters referred to in Recital G above and for other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, IT IS AGREED as follows:

1   INTERPRETATION

1.1   Definitions

In this Agreement, unless the context otherwise requires:

"Arbitration Tribunal" means the arbitration tribunal as constituted in accordance with the Charterparty.

"MFB" means MFB Solicitors;

"MFB Escrow Agreement" means the escrow agreement dated the same date as this Agreement and made between TMT, PBS and MFB, pursuant to which (*inter alia*) PBS has undertaken to deposit with MFB as escrow agent on or before [●] the sum of US$993,600 as security for the Despatch Claim;

"Authorised Representatives" means the persons set out in Schedule 2 (*Authorised Representatives*), as amended pursuant to Clause 4.5;

"Business Day" means a day on which banks are open for business in London;

"Claims" means claims, demands, losses, costs, damages, expenses and liabilities of every kind and nature whatsoever (including without limitation legal expenses);

"Fund" has the meaning given in Clause 3.2;

"Party" means a party to this Agreement; and

"Payment Instruction" has the meaning given in Clause 4.1(a).

1.2   Interpretation

In this Agreement, unless the context otherwise requires:

(a)   the singular includes the plural (and vice versa);

(b)   references to Clauses and Schedules are to Clauses and Schedules to this Agreement, and references to this Agreement include its Schedules;

(c)   references to this Agreement or any other document or to any specified provision of this Agreement or any other document are to this Agreement, that document or that provision as in force for the time being and as amended from time to time in accordance with the terms of this Agreement or that document or, as the case may be, with the agreement of the relevant parties;

(d)   a person includes a corporate or unincorporated body, and references to any person in or party to this Agreement shall include reference to such person's successors (including its lawful successors in title) and assigns, in each case as permitted under law and under this Agreement; and

3.08.1328/00 2910++

(e) "including" and variations thereof means "including but not limited to".

2   APPOINTMENT OF ESCROW AGENT

2.1 TMT and PBS designate and appoint the Escrow Agent as escrow agent and the Escrow Agent accepts such appointment in accordance with and limited to the terms and conditions of this Agreement.

2.2 The Escrow Agent shall act under this Agreement as a stakeholder only. No term or provision of this Agreement is intended to create, nor shall any such term or provision be deemed to have created, any joint venture, partnership or solicitor-client relationship between the Escrow Agent and PBS. This Agreement shall not be deemed to prohibit or in any way restrict the Escrow Agent's representation of TMT, who may be advised by the Escrow Agent on any and all matters pertaining to this Agreement and/or the Charterparty, and PBS hereby waives any conflict of interest.

3   ESTABLISHMENT OF ESCROW FUND

3.1 PBS, TMT, TMT Bulk and Ducky Express agree immediately on signature of this Agreement to instruct New York attorneys to make all necessary applications in New York or elsewhere in order to procure that the Funds Attached (being a total of US$5,592,213.41) shall be deposited with the Escrow Agent at the first available opportunity. PBS agrees that it shall seek no further Rule B Attachments of TMT, TMT Bulk or Ducky Express' property in the United States solely in relation to the claims set forth in the Complaint(s) herein. Further, New York attorneys shall thereafter dismiss the New York action without prejudice subject to the terms of the Escrow Agreement.

3.2 Once the Funds Attached have been deposited with the Escrow Agent, they shall constitute a fund (the "Fund") which shall be held as security for the Demurrage Claim referred to in Recital (B) above.

3.3 Once the Fund has been established, TMT Bulk and Ducky Express shall relinquish all claims over the Fund, which shall be held by the Escrow Agent for the benefit of TMT and PBS on the terms set out in this Agreement.

3.4 On no account shall the Fund exceed the sum of US$5,592,213.41.

3.5 The Escrow Agent does not have any proprietary interest in the Fund deposited hereunder or any interest (the "Interest") accrued thereon but merely holds such Fund and the Interest as escrow agent subject to the terms of this Agreement.

4   OPERATING/RELEASE PROCEDURE

4.1 Without prejudice to Clause 4.2 below, the Escrow Agent shall release the Fund or any portion thereof to any designated payee in accordance with:

(a) the terms of a written notice (a "Payment Instruction") given by letter or facsimile transmission in the form, or substantially in the form, set out in Schedule 1 signed by an Authorised Representative of TMT and an Authorised Representative of PBS directing the Escrow Agent to release the Fund or any portion thereof as set forth therein. Such Payment Instruction shall be given to the Escrow Agent before 1 p.m. on the Business Day on which the payment is to be made; or

    (b)    a final and unappealable arbitration award made by a London arbitration tribunal or, in the case of appeal from such an arbitration award, by a final unappealable judgment of the English High Court; or

    (c)    the terms of any written settlement agreement concluded between TMT and PBS.

4.2    The Escrow Agent shall release the Interest as it accrues or any portion thereof to TMT in accordance with TMT's instructions, or in the absence of any such instructions, shall hold the Interest to TMT's sole order. For the avoidance of any doubt, the Escrow Agent is authorised to release the Interest or any part thereof to TMT on the sole instructions of TMT, without reference to PBS.

4.3    In the event that an unappealable arbitration award or unappealable judgment, or a settlement agreement provides for a greater amount than the Fund to be paid to PBS in respect of the Claims, this Agreement does not relieve TMT of its responsibility to pay PBS the full amount of the said unappealable arbitration award, unappealable judgment or settlement agreement in respect of the Claims.

4.4    In the event that an unappealable arbitration award or unappealable judgment, or a settlement agreement provides for a lesser amount than the Fund to be paid to PBS in respect of the Claims, the Escrow Agent shall be deemed to be irrevocably authorised to release any remaining sum to the order of TMT, without the need for a formal Payment Instruction.

4.5    PBS and TMT each undertakes to give the Escrow Agent two (2) clear Business Days' notice in writing of any amendment to the list of its Authorised Representatives giving the details specified in Schedule 2. Any amendment to the list of Authorised Representatives of PBS or TMT shall take effect upon the expiry of such two (2) clear Business Days' notice.

## 5    ESCROW AGENT

5.1    It is agreed between PBS, TMT and the Escrow Agent that:

    (a)    The Escrow Agent may discharge any instruction to pay any sum out of the Fund and/or from the Interest by instructing its bank to do so and the Escrow Agent shall have no liability for any delay or failure on the part of its bank or for any loss which either of PBS or TMT may suffer as a result of any such delay or failure. The Escrow Agent shall not be required to make any distribution to the extent that the Fund is insufficient.

    (b)    When making any payment out of the Fund, the Escrow Agent may withhold or deduct any sum which it is obliged by law to withhold or deduct (whether in respect of liability to taxation or otherwise). PBS and TMT irrevocably authorise the Escrow Agent to pay all bank charges, taxation and other liabilities referable to the operation of the Fund out of the Fund and PBS and TMT severally undertake to indemnify the Escrow Agent, and keep the Escrow Agent indemnified, against all such charges and liabilities referable to the operation of the Fund.

    (c)    To the extent that the Escrow Agent is obliged by law to withhold or deduct any sum (or incurs any bank charges, taxation or other liabilities) which relates solely to the Interest, the Escrow Agent shall pay, withhold or deduct all such sums from the Interest and TMT irrevocably authorises the Escrow Agent to do so.

(d) The Escrow Agent shall not be liable in respect of any act or omission in relation to any amounts retained or any payments made or in relation to any matter which is the subject of this Agreement. The Escrow Agent may rely without enquiry on any Payment Instruction which appears on its face to be signed on behalf of PBS and TMT in accordance with Clause 4.1(a); or on any unappealable award of an arbitration tribunal in accordance with Clause 4.1(b); or on any instructions from TMT in accordance with Clause 4.2; or on any unappealable arbitration award or unappealable judgment, or settlement agreement in accordance with Clauses 4.4 and 4.5. The Escrow Agent shall not be required to enquire whether a Payment Instruction has been validly given or executed nor shall the Escrow Agent be under any liability to any person if a Payment Instruction has not been validly given or executed.

(e) This Agreement expressly sets forth all the duties of the Escrow Agent. The Escrow Agent shall not be bound by (and shall be deemed not to have notice of) the provisions of any agreement entered into by or involving TMT, TMT Bulk, Ducky Express and PBS except this Agreement and any Payment Instruction and no implied duties or obligations of the Escrow Agent shall be read into this Agreement and any Payment Instruction.

5.2 This Clause 5 shall survive the termination of this Agreement howsoever occurring.

6 NOTICES

6.1 All notices required or permitted to be given or served under this Agreement shall be in writing in the English language, shall be given or served by fax, courier or post (return receipt requested) to the intended recipient at the addresses or numbers shown below (or to such other addresses or numbers within the jurisdiction of the High Court of England and Wales as the relevant Party may from time to time notify the others in writing) and provided that they are so given or served shall be deemed to be effective upon receipt:

(a) If to TMT, TMT Bulk or Ducky Express:

Ince & Co
International House
1 St Katharine's Way
London E1W 1AY

Fax: +44 20 7481 4968
Attention: Mr Will Marshall

(b) If to PBS:

MFB Solicitors
45 Moorfields
London EC2Y 9AE

Fax: +44 20 7256 6778
Attention: Mr Andrew Wright

(c) If to the Escrow Agent:

3.08.1388.00 29 1044

Ince & Co
International House
1 St Katharine's Way
London E1W 1AY

Fax: +44 20 7481 4968
Attention: Mr Will Marshall

7  **TERMINATION**

7.1  Subject to Clauses 5.2 and 9.4, this Agreement shall terminate and the Escrow Agent shall be discharged from all duties hereunder, upon such date as the Escrow Agent shall have distributed all of the Fund and the Interest pursuant to this Agreement.

8  **GENERAL**

8.1  This Agreement shall be binding upon and inure solely for the benefit of the Parties and their respective successors and assigns. No Party may assign or transfer any of its rights or obligations under this Agreement without the prior written consent of the other Parties.

8.2  No variation of this Agreement shall be effective unless in writing and signed by all the Parties.

8.3  This Agreement and any Payment Instruction may be executed in any number of counterparts, each having the same effect as if the signatures on the counterparts were on a single copy of this Agreement or Payment Instruction, as the case may be.

8.4  A person who is not party to this Agreement may not enforce its terms under the Contracts (Rights of Third Parties) Act 1999.

9  **LAW & JURISDICTION**

9.1  This Agreement and all non-contractual obligations which may arise in connection with it shall be governed by English law.

9.2  The Parties irrevocably agree that any disputes or other matters whatsoever arising under or in connection with this Agreement (including any dispute relating to non-contractual obligations arising from or in connection with this Agreement, and any dispute regarding the existence, validity, enforceability or termination of this Agreement or the consequences of its nullity) (collectively, "Disputes") (i) shall be referred to the Arbitration Tribunal in London as constituted in accordance with the terms of the Charterparty, (ii) agree that the Arbitration Tribunal is the most appropriate and convenient forum to settle any Disputes; and (iii) agree not to commence any proceedings in connection with any Disputes except in the Arbitration Tribunal.

9.3  Each Party irrevocably consents to the service of process relating to any proceedings before the English courts in connection with this Agreement by mailing or delivering a copy of the process to its address for the time being applying under Clause 6.

9.4  The agreements contained in this Clause 9 shall be severable from the rest of this Agreement and shall remain valid, binding and in full force and shall continue to apply notwithstanding this Agreement or any part thereof being held to be avoided, rescinded, terminated,

discharged, frustrated, invalid, unenforceable, illegal and/or otherwise of no effect for any reason.

(this remainder of this page is intentionally left blank)

3.02.1589.00.201944

SCHEDULE 1

FORM OF PAYMENT INSTRUCTION

Date: [●]

To:

Ince & Co
International House
1 St Katharine's Way
London E1W 1AY

Fax: +44 20 7481 4968
Attention: Mr Will Marshall

Dear Sirs

Escrow agreement dated July [●], 2008 between TMT Bulk Co. Ltd., TMT Bulk, Ducky Express Shipping S.A., Pacific Bulk Shipping Ltd. and Ince & Co (the "Escrow Agreement")

Words and expressions defined in the Escrow Agreement shall have the same meanings when used in this Payment Instruction.

This Payment Instruction is being provided to you in accordance with Clause 4.1(a) of the Escrow Agreement. We hereby irrevocably instruct you to pay the following amount from the Fund to the account specified below:

[●]

This Payment Instruction shall be governed by English law.

Yours sincerely,


TMT Bulk Co. Ltd.

By:    ...............................................
       (Authorised Representative)

and

Pacific Bulk Shipping Ltd.

By:    ...............................................
       (Authorised Representative)


3.08.1588.00 29 16-44

## SCHEDULE 2

### AUTHORISED REPRESENTATIVES

| TMT BULK CO. LTD. | | | |
|---|---|---|---|
| Name: | Position: | Specimen Signature: | Telephone Number: |
| 1. Simon Spark | Partner, Ince & Co | | +65 6538 6660 |
| 2. Christopher Grieveson | Partner, Ince & Co | | +65 6538 6660 |
| 3. John Simpson | Senior Associate, Ince & Co | | +65 6538 6660 |
| 4. Ian Cranston | Partner, Ince & Co | | +44 (0)20 4781 0010 |

| PACIFIC BULK SHIPPING LTD. | | | |
|---|---|---|---|
| Name: | Position: | Specimen Signature: | Telephone Number: |
| 1. Sun Min | General Manager | | 852-25811699 |
| 2. Lau Wing Yan | Director | | 852-25811699 |
| 3. Chu Kong | Director | | 86-755 88821399 |
| 4. | | | |

3:09.1588.00 291644

IN WITNESS whereof this Agreement has been duly executed on the day and year first above written.

SIGNED on behalf of
TMT BULK CO. LTD.
TMT BULK
DUCKY EXPRESS SHIPPING S.A.
by JOHN SIMPSON, INCE & CO            ........................
                                       [JOHN SIMPSON]

in the presence of:

Witness
Name: LOUISE BULLEN
Address: INCE & CO 16 COLLYER QUAY, #01-24 HITACHI TOWER, SINGAPORE 049318
Occupation: SOLICITOR
                                       Bullen.

SIGNED on behalf of
PACIFIC BULK SHIPPING LTD.
by SUN MIN                             ........................
                                       [ SUN MIN ]

in the presence of:

Witness
Name: T K WONG
Address:
Occupation: Pacific Bulk Shipping Ltd. 2212 WEST SHUN TAK CENTRE. HK

SIGNED on behalf of
INCE & CO
by WILLIAM MARSHALL,                   ........................
   INCE & CO                           WILLIAM MARSHALL

in the presence of:

Witness
Name: CLAIRE. H. KENDALL
Address: INCE + CO, 1 ST KATHARINE'S WAY, LONDON, E1W 1AY
Occupation: SOLICITOR + GRADUATE RECRUITMENT MANAGER
                                       Claire. H. Kendall